## TILGHMAN *vs.* LEWIS'S ESTATE.

APPEAL FROM THE COURT OF PROBATES FOR THE PARISH AND CITY OF
NEW-ORLEANS.

Where the plaintiff claims from the executor of his uncle's estate, a large
sum for his services as clerk and book-keeper, at a stated annual salary
for the time he served, and there is no proof of any contract or agreement
to pay a salary or wages at any particular rate per annum;- and where
that assumed by the plaintiff clearly appears by his own interpolation in
the books of his employer: *Held,* that he cannot recover in such a case,
having depended on the generosity of his relation for remuneration.

So, the plaintiff cannot recover as on a *quantum meruit,* when he sues
for wages on an agreement for an annual salary or hire, and when the
evidence shows he served under no contract, expressed or implied, but
depended on the beneficence of his employer, who was his relation; and
when it is also shown he improperly interpolated a feigned contract for
wages, in the books he was employed to keep.

This is an action against the estate of the late Robert
Lewis, to recover the sum of eleven thousand six hundred
and twenty-five dollars, for services rendered, and settled in
the books of the deceased, in his lifetime, from the 24th
November, 1824, until the 24th March, 1831, at the rate of
fifteen hundred dollars per annum; and for like services in
a running account from the 24th of November, 1831, till
26th August, 1832. The plaintiff alleges that the testa-
mentary executor refuses to allow his account, for which he
prays judgment against the succession.

The executor on behalf of the estate, pleaded a general
denial; and denied specially that his testator owed the
plaintiff any sum whatever, for services or otherwise, at his
death. He avers the plaintiff is indebted to the succession
of which he is executor, in the sum of three hundred and
fifty dollars, for which he prays judgment in reconvention.
The evidence showed that the deceased Robert Lewis, done

14

a very large business in buying and selling produce, and in drayage, and had a considerable estate in negroes, drays, horses, and houses and lots; that the plaintiff was his nephew and principal clerk, and had been in his employ six or seven years; and that from the fall of 1830, to the time of Lewis's death, in August, 1832, the plaintiff transacted most of his business, and was consulted by his employer generally, in regard to it. It was also shown that Mr. Lewis made provision in his will for his nephew, leaving him a legacy of six thousand dollars, which was paid by the heirs. It also appeared he received his support from his uncle, and his pocket money, while he lived with him.

The books and ledgers of Robert Lewis, which had been kept by the plaintiff, during his employment as clerk, were produced in evidence, but "*only to show the extent of the labor of the plaintiff, and the manner in which he kept them.*" On the inspection of the books, as offered in evidence, the probate judge remarks: "that the entry on which the plaintiff relies to establish the greater part of his claim, affords no satisfactory evidence of its justness:

1. Because the entry, which is stated as follows: "*by services rendered from the 24th November, 1824, as per agreement, at fifteen hundred dollars per year,*" is in the handwriting of the plaintiff himself.

2. The place in the book in which this entry has been made, clearly shows that it could not have been made at the time the alleged agreement is said to have taken place; because no entry was made anterior to 1826, and the one in question, from the place it occupies, could not have been made before 1828.

3. The testimony shows, the books remained in the possession of the plaintiff, six or seven days after his employer's death.

4. This entry was never seen before this period by a former and late clerk, who was well acquainted with the books.

6. There are other suspicious entries under the head of plaintiff's account in the books which he kept, &c.

From all the evidence, the court inferred the plaintiff
relied on the bounty of his deceased relative for compensation for his services, and that nothing was stipulated by way of
agreement. That his support and the legacy of six thousand dollars left him in the will of his uncle, was to be viewed as in remuneration of his claims. From all these considerations, he was entitled to recover nothing, either on an agreement or on a *quantum meruit.* Judgment was rendered in favor of the defendants. The plaintiff appealed.

*Preston,* for the plaintiff.

1. The letters of Robert Lewis show that the plaintiff was in his employ since 1824, as well as the testimony in the case.

2. The testimony of the witnesses proves that the plaintiff was in the employment of Lewis; and continued so to the time of his death, the 25th August, 1832.

3. The testimony of these witnesses shows the business of Lewis to have been very great and various, and the services of plaintiff to have been most important, as his principal clerk and agent.

4. An inferior clerk is shown to have received sixty dollars a month for his services. The plaintiff is, of course, entitled to more.

5. The executor himself admits, on oath, the plaintiff's services were fairly worth fifty dollars a month.

6. The legacy to Tilghman was gratuitous; nothing shows it to have been remunerative. *It does not compensate wages. Louisiana Code,* 1834.

7. The defendants received ample compensation for it in plaintiff's not appearing to support the will of Robert Lewis.

*Slidell,* contra.

*Mathews, J.,* delivered the opinion of the court.

This suit was commenced against the executor of the deceased, but his will having been subsequently annulled, it was carried on against his heirs, &c.

EASTERN DIST.
*March*, 1835.

TILGHMAN
*vs.*
LEWIS'S ESTATE.

Where the plaintiff claims from the executor of his uncle's estate, a large sum for his services as clerk and book-keeper, at a stated annual salary for the time he served, and there is no proof of any contract or agreement to pay a salary or wages at any particular rate per annum, and where that assumed by the plaintiff, clearly appears by his own interpolation in the books of his employer: *Held*, that he cannot recover in such a case, having depended on the generosity of his relation for remuneration.

So, the plaintiff cannot recover on a *quantum meruit*, when he sues for wages on an agreement for an annual salary or hire; and when the evidence shows he served under no contract, express or implied, but depended on the beneficence of his employer, who was his re-

The plaintiff claims a large sum of money from them on account of services rendered to the deceased, during several years of his life time, as clerk, &c. Judgment was rendered in favor of the defendants in the court below, from which the plaintiff appealed.

, The claim is made on a pretended contract for wages, at the rate of fifteen hundred dollars per annum, and the plaintiff alleges that he rendered services from the year 1824, until 25th August, 1832, the time of the death of his employer, who was his uncle. The will of the deceased contained a clause, by which a legacy amounting to six thousand dollars was given to his nephew, which was paid to him by the heirs who attacked the testament, on condition that he would not aid in supporting it.

The testimony proves the length of time during which the petitioner served his uncle as clerk, but there is no proof of any contract or agreement to pay wages at any particular rate of hire ; that assumed as the basis of the action, being shown clearly to be an interpolation made by the plaintiff in the books of his employer, and most probably after the death of the latter.

The only remaining question in the case is, whether judgment ought to have been given in favor of the appellant, as on a *quantum meruit*. In relation to this question the court below considered the evidence offered in the defence, as sufficient to establish the fact that he did not serve under any contract, either express or implied, and depended entirely on the beneficence of his employer to make remuneration for the services rendered. The testimony of the cause does not explicitly prove this fact; but, taken in conjunction with the circumstance of the relationship which existed between the employer and his servant, and the fact of the latter having improperly interpolated a feigned contract for wages, in the books by him kept for the former, we are of opinion that the Court of Probates did not err in deciding against the plaintiff's claim. It is readily perceived that, according to the manner in which we have treated this question, it has

not been considered that the receipt of the amount of the legacy by the appellant, ought, in any manner, to affect his claim for wages ; the rejection of it resting exclusively on another principle, viz : that he served not for any stipulated wages, under a contract, either express or implied, but depended wholly on the generosity of his relation, for recompense.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Court of Probates be affirmed, with costs.

EASTERN DIST.
*March*, 1835.

lation, and when it is also shown he interpolated a feigned contract for wages, in the books he was employed to keep.

