| 30 | 245 |
| 47 | 342 |
| 30 | 245 |
| 49 | 778 |
| 30 | 245 |
| 109 | 519 |

No. 6692.

WIDOW SARAH GAINES vs. SUCCESSION OF MARTINEZ DEL CAMPO.

A general plea of "prescription," without indicating what specific prescription the party invokes, and relies on, is too vague for this court to take cognizance of.

The omission on the part of an employee to present a statement of account to the employer for services rendered to the employer, will not prevent the former from recovering the value of those services from the employer's succession.

APPEAL from the Second District Court, parish of Orleans. *Tissot, J.*

*Sambola & Ducros* for plaintiff and appellee.

*Geo. L. Bright* for defendant.

The opinion of the court was delivered by

DEBLANC, J. Mrs. Sarah Gaines claims from the succession of Jose Martinez Del Campo the sum of $5400.

1st. For the use and rent of her household furniture, effects useful and ornamental, utensils, bed, beddings, etc., by the deceased and for attending and managing his domestic and household affairs (keeping house for him) from March 1st, 1873, to March 1st, 1876, at $100 per month...... ............................................... $3,600

2d. To constant services rendered by nursing and taking care of the deceased in his old age and illness, say twelve months preceding his death, at $5 per day ......................... 1,800

Total ........................................................ $5,400

The defense is:

1st. A general denial.

2d. That the deceased occupied a furnished room in plaintiff's house, and the plaintiff being unable to maintain herself, he, in kindness paid her rent and maintained her family to an extent largely exceeding the benefits received by him, and were an account now taken, the plaintiff would be largely indebted to him.

3d. Prescription.

Defendant pleads, in general terms, "*the exception of prescription*"— but, of the many prescriptions known to our laws, which did he intend to invoke? We are not informed, and—in its form—that plea is so vague and so indefinite, that—to sustain the exception—we would have to supply the plea itself, and infer which prescription is relied on. This we can not do.

15 L. 550. 21 A. 396—671.

There remains to be determined but a question of facts, and—in this case—it is, by far, the most difficult one. It is in evidence that Del Campo lived like a man of means, but the extent of his means at and before his death is not shown. The inventory of his estate was—for that purpose—introduced in the lower court, but was not copied in the transcript. As however, neither the plaintiff, nor the representative of Del Campo's succession complains of that omission, they must both consider it as unnecessary to a proper decision of this controversy.

Del Campo lived in a house rented by himself, furnished and kept by Mrs. Gaines, who washed and cooked for him. He was an old man, but went regularly to his business from 9 o'clock in the morning until 4 in the afternoon. One of his intimate friends, Justo Garcia y Leon testified that Mrs. Gaines treated him like a child; she was near him day and night; he could not use his hands; she had to dress him in bed, put on his drawers, socks, pants and shoes, and to render other and fulsome services which—however calculated and interested they may have been— should be rewarded.

It is not improbable that—for that constant care, those indefatigable attentions, Mrs. Gaines expected to be compensated by a gift, a legacy proportionate to her important services and the presumed wealth of Del Campo; but that not unreasonable expectation, and—though not unselfish—her hesitation to present any account to the deceased, did not destroy her right to recover a just compensation from his succession.

7 A. 207.

Del Campo never gave a cent to Mrs. Gaines; he would not allow her to take and keep boarders. Of those she had when he came to the house occupied by her, only one remained; that one paid to her the price of his board. She told y Leone that the deceased gave her no money:

he answered that Martinez was a gentleman, that he would not forget her. She applied to himself, and he, as his friend, left her under the impression that she would be remembered and rewarded. His generous intention or deceitful promise is now in the grave.

Our attention was arrested by defendant's answer, and—for a moment—we could not refrain from suspecting Mrs. Gaines' *post mortem* demand, but the evidence preponderates in favor of the demand, and does not sustain the allegations of the answer. For rent of her furniture, washing, cooking, nursing and services of every description during the space of three years, the judge of the lower court, who heard and— it may be—knew the witnesses, has allowed plaintiff a fraction over two dollars and thirty cents a day. It is not too much.

The judgment appealed from is affirmed with costs.

### DISSENTING OPINION.

MANNING, C. J. The plaintiff has not established her claim to my satisfaction. She kept furnished apartments for rent on Royal street when Del Campo first became her lodger, and he paid $25 per month. That was seven or eight years ago, the plaintiff said, speaking as a witness in 1876. He paid that rent for three months only. Then he rented the house, and plaintiff's furniture remained in use, other lodgers occupying rooms as before. Afterwards he rented a house on Liberty street and on Rampart, Barracks, and Bourbon streets successively, to all of which the plaintiff's furniture was removed. These rents were $75 at first, later $100 and $125 per month, which Del Campo paid. He used two rooms or three as stated by the plaintiff. The other rooms were at her disposal. She says her lodgers were sent away by her because Del Campo would not permit any of them to stay in the house, but Davis, one of plaintiff's witnesses, says he rented a room in these several houses from plaintiff during the whole time Del Campo was lodging in them, and paid the rent to the plaintiff. It is very clear to my mind that Del Campo paid the rent of his suite of furnished apartments by giving the money to the landlord instead of the plaintiff, and thus ensuring that he would not be disturbed by ejection for nonpayment of house rent. The circumstances detailed by plaintiff as giving rise to his renting the different houses, instead of renting from her a suite of furnished rooms in them, confirm this view. He had not been renting her rooms three months before she asked him to become her security for the house rent. He wisely declined to do that, and instead rented the house himself. The sum he paid is about what the monthly rent of a suite of rooms would be, furnished as his were according to the witnesses' description. During the years of highest rent it

was more, and his liberality was no doubt occasioned by the plaintiff's care of him and attention to his wants.

The charge for nursing is no better supported. Del Campo went out to his business every day, and his sickness was short. Garcia y Leon, one of plaintiff's witnesses, says Del Campo was a pretty hearty old man up to the time he died. I can not approve a charge of $1800 for a year's nursing of a man who was on the streets every day through the business hours, even if he were over-exacting in his demands of the plaintiff's time and attention when in doors, and it is not an insignificant circumstance that during Del Campo's life no demand was made of him by plaintiff, and her services are said to have continued through seven years.

As I think plaintiff has failed to support her claim by satisfactory proof, it is unnecessary to consider whether the plea of prescription would bar it, but I can not understand why that plea should be held to be defective unless the pleader specifies the time or number of years that must have elapsed to sustain the plea. The plaintiff's counsel did not object to it for vagueness. If a party to a suit wishes to avail himself of a bar afforded by the statute of limitations, it seems to me sufficient for him to plead that the right to recover is thus barred—in our phraseology, that it is prescribed. And whether the particular period of prescription is one or thirty years, the court must know or ascertain from the Code or statutes whether the claim is prescribed by any period, and apply the law accordingly.

I think the case is with the defendant, and that he ought to have judgment.

## CONCURRING OPINION.

MARR, J. The Code, article 3464 (3427) requires prescription to be pleaded " expressly and specially." I think this is but an amplification of the preceding article, which declares that " courts can not supply the plea of prescription."

The party who relies on the bar resulting from the lapse of time must set it up, must inform the court and the adverse party by his pleading that he makes that defense. It would be more convenient that the pleader should state what the prescription is which he considers applicable, and on which he relies; but the petition generally discloses the nature and particulars of the demand with sufficient certainty to enable the court and the adverse party to know, at once, to what prescription it is subject. I am not prepared to say that the statement in the answer that the action is prescribed, or the simple exception of prescription, without further specification, would not be sufficient, especially where no objection is made by the adverse party.

The demand for rent and use of the furniture would be subject to the prescription of three years; and that for personal services, to the prescription of one year; so that neither was prescribed when the suit was brought.

Plaintiff certainly rendered such services to Del Campo as entitled her to a liberal compensation; and although the whole of her furniture was not needed for the rooms and apartments occupied by Del Campo, his use of it was virtually exclusive, because he would not permit her to receive other boarders or lodgers, and she had but one, Davis.

I attach no importance to the fact that plaintiff did not present her account, and have a settlement with Del Campo during his life. The testimony shows that she expected, not without reason, that she would be remembered, and compensated in the testamentary dispositions of Del Campo; and as her expectations were not realized, she is entitled to demand proper compensation.

The amount allowed seems to me large; but it is not up to the estimation of plaintiff and her witnesses, and no contradictory proof was introduced or offered.

I concur in the decree pronounced by Mr. Justice DeBlanc.