No. 11,834.

MICHAEL MCLAUGHLIN vs. THE NEW ORLEANS & CARROLLTON RAILROAD COMPANY.

While it is held that it is the duty of those in charge of a car, at crossings particularly, to be careful and watchful, those who use street crossings must exercise a reasonable degree of care and watchfulness.

The motorman had a right to suppose that plaintiff's son would not, after warning, attempt to cross immediately in front of the car at a distance too near to prevent the accident.

While no one should be held to a degree of care and caution beyond his years, a boy of eleven years and four months of age can not be relieved from the exercise of all care and prudence.

APPEAL from the Civil District Court for the Parish of. Orleans.
    King, J.

*Bernard Titche* and *R. L. Tullis* for Plaintiff, Appellee.

---

*John M. Bonner* and *Henry P. Dart* for Defendant, Appellant.

---

Argued and submitted November 6, 1895.
Opinion handed down December 2, 1895.
Rehearing refused January 6, 1896.

---

The opinion of the court was delivered by

BREAUX, J.　Plaintiff claims damages caused by the death of his son, aged eleven years and four months, occasioned, he alleges, by the negligence of a motorman in charge of an electric car owned and operated by the defendant.

In September of last year Michael McLaughlin, Jr., petitioner's son, was proceeding out of Melpomene street, in this city, driving a hoop with a stick or small rod he held in his right hand, and in so doing was crossing St. Charles avenue at its intersection with Melpomene street. While in the act of crossing the track of the defendant company, at this intersection, he was struck by one of the cars of the company and carried a distance of several feet, crushing and lacerating his body. He survived about an hour, suffering excruciating pain and agony.

The testimony of the witnesses who saw the accident is conflicting regarding the sounding of the gong on the colliding car and giving the alarm, and regarding the cutting off of the electric power and attempting to stop the car by applying the brakes. It is also a question whether the boy stopped at all on arriving at the track of the defendant or continued across, also as to whether he was facing toward the car or in an opposite direction when he was struck.

The first witness (who saw the accident) on behalf of plaintiff testifies that the boy was bent, and rolled his hoop; that it seemed a little heavy, and caused him occasionally to pause; that his face was in the direction of the advancing car; that he rolled the hoop near to the centre of the track, immediately in front and near the car, when the car struck him; that he was carried about thirty feet, and the car ran on about two lengths further; that as the car ad-

vanced upon the boy the motorman seemed dumbfounded and confused, and made no movement to prevent the accident.

At the time of the accident there was a passenger on another car ascending that met the colliding car about the centre of Melpomene street. This passenger, as a witness, says that he saw the boy approaching the car track, and not seeing him across the avenue after the car on which he was had passed, he immediately jumped off and ran back to the car they had just passed, and found the boy on the ground. He states that the rear end of the colliding car was about twenty-five feet below the boy.

A woman also testifies, who corroborates, in some respects, the testimony of the first witness. In other respects her testimony was entirely at variance from that of other witnesses; for instance, she says that the boy had taken up his hoop and hung it on his arm to go across the crossing when he was struck.

Without further comment than that in the main, the other witnesses who testified for plaintiff agree with the testimony of these two witnesses; we take up the testimony for the defendant.

The only passenger who was on the car with the asserted offending motorman testified that at a short distance from the corner of Melpomene and St. Charles streets he noticed a boy rolling a hoop, and that when the car on which he was arrived near the intersection of these two streets the boy stopped, at the same time the brakeman moderated the speed of the car; that upon the boy stopping he again loosened the brakes; a moment after, the car struck the boy as he was attempting to cross; that it was impossible to stop the car in time to prevent the accident.

This witness also testifies that it carried the little boy some twenty feet, after striking him, before stopping.

The motorman and the conductor of the car corroborate this witness. The plaintiff, in support of his charge that the motorman was an inebriate and incompetent, refers to the acknowledgment of the motorman, as a witness, that three years prior to the trial he was discharged from the police for drunkenness.

The witness added, that he had not since indulged in drink to excess, and that while on duty he did not drink.

With reference to the inebriety charged, the question is whether or not the motorman's acts at the time of the accident came to the requirement of the care devolving upon him.

We are not inclined to accord the least indulgence to one under the influence of liquor while in the discharge of duty; in justice, however, the inebriate condition charged can not be assumed. The only evidence is that of the motorman, who denies that he drinks largely, and asserts that on duty he is always sober.

The inquiry relates to the motorman. The plaintiff insists that he was incompetent and derelict in the performance of his duty when his son was killed.

The authority of Railroad Company vs. Gladmon, 15 Wallace U. S. 401, 405, is greatly relied upon at the bar as applying to the facts of the case.

In the case cited the facts were that one of the drivers of the defendant company, instead of looking at his horses, turned his face, and was conversing with some one near him, when a child seven years old attempted to run across the track in front of the horses. Before he got across he turned to come back again and was severely injured. The record showed no testimony but that of one witness, who mentioned the chief facts above stated, and testified " that if the driver had not been looking at his companion he could have checked the horses in time to have prevented the accident."

Here the facts, as shown by the weight of evidence, are that the boy came hastily and unexpectedly on the track, at a time when the car could not be arrested, under circumstances that the motorman could not control, with care, however watchful; in other words, that the car could not be brought to a stop speedily enough to prevent the accident.

The gong of the car was sounded by the motorman.

It is true that this fact is denied by several witnesses. The affirmative testimony of the witnesses, near the accident, that the gong was sounded and alarm given, is, we think, entitled to weight and credence.

Witnesses for the plaintiff have found fault with the motorman, because, as they assert, he failed to timely apply the brakes and turn down the controller.

The witnesses for the defendant were near the place of the accident; their view was not obstructed by anything.

After weighing their testimony with all the attention we could command, we have concluded that its weight is with them, and that it sustains the defence.

It is true that children are to be held responsible for such a degree of care, as may usually be expected of them, taking due account of their age, and the particular circumstances of each case. But it is equally true that no act constitutes negligence unless there has been a want of ordinary care on the part of the person charged with negligence.

Judged by that test, we must conclude that the verdict allowed damages in error, and that justice requires that it be reversed.

It is therefore ordered, adjudged and decreed that the verdict and judgment appealed from be reversed, avoided and annulled, and that there be judgment for defendant, rejecting plaintiff's demand at his costs.