(51 South. 677.)

No. 17,627.

Succession of DASTE.

(Feb. 14, 1910.)

*(Syllabus by the Court.)*

1. EXECUTORS AND ADMINISTRATORS (§ 206*)— CLAIMS AGAINST DECEDENT — SERVICES OF FOSTER DAUGHTER.

There is a presumption that the kindly services rendered by a foster daughter to her foster father during his last illness are gratuitous, and the law will not allow recovery for such services in the absence of an express promise to pay for them, or the presence of such circumstances as will be equivalent to such a promise. Wood, Master and Servant, § 72; Andrus v. Foster, 17 Vt. 556; Lunay v. Vantyne, 40 Vt. 501.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 733; Dec. Dig. § 206.*]

2. EXECUTORS AND ADMINISTRATORS (§ 221*)— CLAIMS AGAINST DECEDENT'S ESTATE—EVIDENCE.

Parol evidence to prove such a promise, or circumstances from which such a promise can be implied, so as to bind the estate of a dead man, is weak evidence, and should be corroborated to some extent at least.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 903½; Dec. Dig. § 221.*]

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

In the matter of the Succession of Jean (or John) Daste, Emily Olsen presented an account. From an order disallowing the same, she appeals. Claim rejected, and opposition dismissed.

Benjamin Rice Forman, for appellant. Chas. F. Claiborne, for appellees Daste. W. J. Hennissey, for appellees executors.

BREAUX, C. J. Mrs. Emily Olsen claims an amount of $900 for one year's services rendered, she alleges, to the late John Daste.

The account of the executors of the last will and testament of the late John Daste was filed. The succession amounted to about $26,000.

The account did not show that the executors admitted an indebtedness to Mrs. Olsen for any amount. Her name is not mentioned on the final account.

The attorney for the succession urged that although the opponent urged a verbal agreement of employment by the late John Daste there is no evidence in its support.

We have not found any evidence, nor was there a promise to pay her made by the late John Daste for the services which opponent claims.

Opponent sues on a quantum meruit for services rendered the late John Daste.

She was reared by the late John Daste and his late wife. Mrs. Daste departed this life some years ago.

For about two years before John Daste's death, he was feeble and at times ill

Opponent claims that she was sent for by him to come to the city and reside in order to be near him and give him assistance in his illness.

She complied with the request; called on him frequently, she said. She it seems was not alone at the house when she called; there was a white cook, who also gave him attention and assistance in his illness.

Opponent said that she had a letter, written by one who afterwards became one of the executors of Daste, requesting her to come here to be near him. This executor did not place the claim on the account, and, although she testified as to the correctness of the account, she was never questioned about this letter at all, nor asked why she did not place opponent's claim on the account. The opponent stated that she had lost the letter and attempted to prove its contents, consisting of the request before mentioned, by her oral testimony alone.

The universal legatee, who is unwilling to pay the account of this opponent, urged that the white cook gave to the testator all the attention he needed until about eight months before his death. At that time the universal legatee came over from France to be near his brother during his illness, and he avers that he was with him all the time.

The opponent unquestionably rendered some services, although this is denied by the universal legatee. They were appreciated, as the late John Daste frequently spoke of her in kind terms.

Her witnesses testified that she was at the home of John Daste every day and attended to all that he asked her to do.

There was a slight inclination on the part of these witnesses to enlarge upon the extent and usefulness of the services rendered. For instance: She had often gone on errands for him. When this was sifted down as a result of cross-examination, it became evident that she had called several times on physicians; again she had gone for the priest.

These are insignificant services and cannot very well be taken account of. They are not sufficiently serious to be considered under the circumstances as good cause for charging anything. They are kindly services that do not generally afford ground for a claim.

In addition she testified that she bought some linen and other effects for the house.

In all this, there is this to be said in her favor that she rendered faithful account, as we infer.

Opponent also claims to have performed housework, and that in his moments of suffering she sought to soothe his pains and smooth his pillow of suffering. But in this regard she was not always consistent, for at another time she testified that he did not need any nursing.

The claim does not present itself in a favorable light. She was the adopted daughter of the late Mr. and Mrs. Daste, taken by them when she was only 15 months old; reared, and remained with them until the date of her marriage. They had always been on good terms, and she continued on good terms with them after her marriage.

The universal legatee and another member of the family (the latter had no interest) as witnesses do not agree with the opponent. They testified that the services she rendered were inconsiderable.

There is evidence before us about a check for $250, which was never signed, although spoken of.

The notary who wrote the will of John Daste, and who afterward as notary attended to the settlement of the succession, testified as to this check. He said that the deceased spoke of giving a check to opponent, but that afterward he said he would direct his testamentary executor to attend to the request for him.

It appears that the testator never made any

request about this check. It remained an unsigned check, not explained as to the object or consideration for which it was to be given. This check is not even corroborative of an acknowledgment of indebtedness on the part of deceased.

It appears as part of the case that the late John Daste at different times gave several presents to opponent, among them a valuable brooch.

Although this was given to her by the deceased, her foster father, and it had been owned by his late wife, her foster mother, she offered to sell this brooch.

It was valued, by persons who pretended to know something about the value of such jewelry, as worth $300; and others placed the value at $1,500.

She offered to sell it to the universal legatee for $500, and said that if he chose to pay her that amount for it she would abandon all claims against the succession; so that at most, taking the brooch at its lowest value, she was willing to receive $200 for all alleged services.

The opponent, as the foster daughter, owed some duty to the deceased.

We are not certain that the services were such as would justify a judgment in her favor.

Parol evidence, and that is the only evidence there is in this case, against the estate of a dead man is weak; it should be corroborated to some extent at least. Calhoun v. McKnight, 44 La. Ann. 577, 10 South. 783; Succession of Townsend, 40 La. Ann. 79, 3 South. 488; Bodenheimer v. Bodenheimer's Ex'rs, 35 La. Ann. 1007; Hennen's Digest, p. 518, No. 7.

Under the circumstances there arises a presumption of services gratuitously rendered. Succession of Ploton, 36 La. Ann. 211.

In the Succession of Fink, 13 La. Ann. 104, opponent had rendered occasional services. Their extent and character were not shown.

The testator in his will had not forgotten opponent.

The court said in that case that the services for which opponent claimed seemed to be an afterthought, and were not supported by sufficient data to authorize a judgment for any sum.

Wood on Master and Servant, § 72, says that in all cases where compensation is claimed for services rendered to near relatives, as a father, grandfather, brother, and other relatives, the law will not imply a promise, and no recovery can be had unless an express contract or circumstances equivalent thereto is shown.

In a case cited infra it was held that to recover for services after an adopted daughter becomes of age no recovery could be had without expressed agreement to establish promise to pay therefor. Andrus v. Foster, 17 Vt. 556; Lunay v. Vantyne, 40 Vt. 501.

There is something to about the same effect in Guenther v. Birkicht's Adm'r, 22 Mo. 439; Lantz v. Frey, 14 Pa. 201; Sharp v. Cropsey, 11 Barb. (N. Y.) 224.

The rule is that there is something in the nature of a natural obligation which prevents recovery. Patterson v. Patterson, 13 Johns. (N. Y.) 379.

The French authorities also give effect to the ties of kindness as giving rise to services gratuitously rendered.

Considering the facts and circumstances of this case we are unable to decide that plaintiff is entitled to recover the amount she claims. Prompted by a kindly impulse she rendered services without the least concern about remuneration. She expected, doubtless, to receive an amount larger than she received as a legatee. When it became known that it was not as large as she expected, she then conceived the idea that the services were worth an amount which she had never been heard to mention before her benefactor, in her early days, departed this life.

Under law and authority she is not en- titled to relief at the hands of the court.

The law and the evidence being in favor of the executors and against the opponent, it is ordered, adjudged, and decreed that her claim is rejected and her opposition dismissed.