PROVOSTY, J.
The decedent, a Catholic priest, died at the age of 71, from what the attending physician calls chalky gout or rheumatism deformant — one of those diseases that present poor humanity in its most pitiable state. Eor more than four years he had been practically bedridden, and for more than one year entirely so, unable to attend to himself at all, having to be raised and turned in bed, and fed with a spoon or a tube, “sloughing all over on account of the breaking or bursting of the chalky deposits, and in a gangrenous condition,” his whole body disgusting to sight and smell from the sores and pus and gangrene, the odor of which was as of that of dead rats. Any friends who came near him shunned his touch, for fear it was leprosy. His devoted aged sister and the opponent herein nursed him, washed and cleaned him (he would have passages on himself), and cleaned out his sores, and bandaged him; the opponent having to remove the chalk accumulations and cut out the gangrened tissue and sloughing skin. She, although not a trained, or graduated, nurse, had had more than 20 .years’ experience in nursing, and, as the physician says, was better than a trained nurse, inasmuch as she could fulfill all the functions of one, while not having to be waited upon, but, on the contrary, helping in all the household work. The attendance upon him was continuous, day and night. There was no express hiring of her to do this work. She lived in New Orleans, and he in Biloxi. He had lived in New Orleans, and she had nursed him there; and when he became thus bedridden in Biloxi he caused her to be called to nurse him. She was a widow and without means, as he knew. Although there was no express agreement for remuneration, it was well understood that her services were not gratuitous. She received no payment whatever. When she would mention the matter to him, he would promise her that he would “divide” with her. She understood by this that he would make provision for her compensation in his will. His sister told him that his intention was to give her one of his properties — the one in Biloxi. But when final death had put an end to his living death — to his “martyrdom,” as opponent calls it — it was found that he had given her in his will $100 and an old nongoiná iron clock. His testamentary executor, while recognizing the meritorious character of her services and the utter inadequacy of this $100 and old iron clock as compensation for them, and although realizing the hardship of the case, deemed it his duty to put her down in his account for only this legacy; his understanding of the law being that, as expressed in the syllabus of his brief:
“Where the evidence establishes that the nurse who attended the deceased had no contract with him for her remuneration, but depended entirely upon his promise to reward her by his will, she has no claim beyond the bequest made to her. She will not be allowed to recover on a quantum meruit, on the ground that the bequest is too small” — citing Jacob v. Ursuline Nuns, 2 Mart. (O. S.) 273, 5 Am. Dec. 730; Tilghman v. Lewis’ Estate, 8 La. 108; Succession of Joseph Fowler, 7 La. Ann. 207; Succession of Daste, 125 La. 657, 51 South. 677, 29 L. R. A. (N. S.) 297; Succession of Ploton, 36 La. Ann. 211; Estate of Littell, 50 La. Ann. 299, 23 South. 314; Little v. Dawson, 4 Dall. 111, 1 L. Ed. 763.
[1] The opponent, Mrs. Marie Hess, has filed an opposition to the account, setting forth all the foregoing facts, and claiming $1,500 for the last year of her services and $2,000 for the three years preceding. Her counsel contends that the law is that where valuable services are rendered a testator during his life, for which adequate compensation was expected to be made in his will and is not made, the succession is liable on a *192 quantum meruit, citing Succession of McNamara, 48 La. Ann. 25, 18 South. 908; Dauenhauer v. Succession of Browne, 47 La. Ann. 341, 16 South. 827; Gaines v. Del Campo, 30 La. Ann. 245.
Such, we think, is the correct doctrine. True, in the case of Jacob v. Ursuline Nuns, 2 Mart. (O. S.) 273, 5 Am. Dec. 730, cited by defendant, the court said that:
“If the work be performed, in expectation of being rewarded by a gift, or by a legacy, wages will not be demandable.”
But that doctrine does not accord with the later expressions of this court in the cases cited above hy opponent. Eor instance, in Succession of McNamara, 48 La. Ann. 45, 18 South. 908, the court said, quoting syllabus:
“Where services are rendered of a valuable nature in the expectation of being remunerated in the will of the person to whom they are rendered, and an implied promise to that effect has been held out to the party performing the same, and he is not mentioned in the will, he will be entitled to reasonable compensation out of the estate of the deceased.”
In the case of Dauenhauer v. Succession of Browne, 47 La. Ann. 341, 16 South. 827, quoting syllabus, the court said:
“Although there was no contract for compensation, the law gives plaintiffs an action to recover a reasonable compensation for services rendered the deceased, in his lifetime, under the circumstances developed by the evidence in this case?’
The services thus referred to were incomparably less arduous and meritorious than those in the present case.
In Gaines v. Succession of Del Campo, 30 La. Ann. 245, the court said:
“It is not improbable that for the constant care, those indefatigable attentions, Mrs. Gaines expected to be compensated by a gift, a legacy proportionate to her important services and the presumed wealth of Del Campo; but that not unreasonable expectation, and, though not unselfish, her hesitation to present any account to the deceased, did not destroy her right to recover a just compensation from his succession.”
The cases cited by defendant, except this Jacob Case and that in 4 Dall., which forms no part of our jurisprudence, contain nothing hostile to opponent’s claim. For instance, in Tilghman v. Lewis’ Estate, 8 La. 108, the court said:
“He served not for any stipulated wages, under a contract, either express or implied, but depended wholly on the generosity of his relation, for recompense.”
What the court meant by this was that where, upon the facts of the case, the services appear to have been rendered, as a matter of friendship, not as a matter of business, but with the hope to be remembered in the friend’s will, no action lies. And to the same effect are Succession of Daste, 125 La. 657, 51 South. 677, 29 L. R. A. (N. S.) 297, and Succession of Ploton, 36 La. Ann. 211, where the court found that the services had been gratuitous. In Estate of Littell, 50 La. Ann. 299, 23 South. 314, the court found that the services had- been compensated by a $5,000 gift made just before death.
The Succession of Joseph Fowler, 7 La. Ann. 207, also cited by defendant, supports opponent, as appears from the syllabus:
“Where, for a number of years, an agent rendered important services to his principal, although there was no contract for compensation, nor any intention to charge for his services while their relations existed, yet where, from their habits of friendly intercourse and from the evidence, it may be inferred that the one intended and the other expected that, upon the termination of these relations, a liberal reward would be made for the services, and the principal died intestate and without making any reward, the agent may recover from the succession a reasonable compensation.”
The services of opponent were not rendered gratuitously, and no one for a single moment supposed that they were being so rendered. She was employed as a nurse. True, the amount of her compensation was not fixed; but it was perfectly understood that there was to be payment, and that it was to be adequate.
It was argued at .the bar that the opponent was willing to leave entirely to the generosity of the decedent the question of the quantum *195 of her compensation as same should, be fixed in his will, and that she did so leave it; and that, having done so, she must be content with the amount thus fixed.
This line of defense smacks of estoppel, and this is a poor case for application of the law of estoppel.
For this opponent to be cut oft in that manner it would be required that she should have entered into some hard and fast contract to that effect; and nothing of that kind is revealed by this record. What appears by the record is that she might at any time, down to the very last breath of the decedent, have demanded immediate payment for her services; but that she continued to acquiesce tacitly in the promise of the decedent to divide with her; no time being fixed, either expressly or tacitly, for the making of this division, but she understanding that, in view of the stinginess of the decedent, it would be in his will. She did not understand, and the decedent had no right to believe that she would understand, that this “division” would be made along the line of her getting nothing, or comparatively nothing, only such a pittance as his stinginess or mere caprice might dictate.
[2] Where a legacy is made, as in this case, to a person to whom wages are due, the judgment of the law is not that the legacy is made in payment of the wages, but that it is made out of a spirit of generosity as a gift. “A legacy,” says article 1641, O. C., “made to a servant” shall not be deemed to be “in compensation of his wages.” The utter inadequacy of the legacy in this' case shows that it was not so intended; and we will do the memory of the decedent the justice to so believe. Had it been intended as compensation, the will, doubtless, would have said so; but it is given as a gift, and we will let it stand at that.
[3] The value of the services is fully proved (in fact, undisputed), but, in the discharge of what he conceives to be his duty to the residuary heirs (the brothers and sisters and nephews and nieces of the decedent, all of whom are absentees, except the faithful and devoted sister who with the opponent kept the long vigil at the bedside, and who, judging from her manner of testifying, generously wishes to see the opponent succeed in this suit), the executor has pleaded the prescription of one year; and this plea, we regret to say, cuts off the opponent for all except the last 12 months.
We have duly weighed the argument of her learned counsel that the course of the prescription should begin to run only from the death of the decedent, according to the doctrine of the cases of Nimmo v. Walker, 14 La. Ann. 581; Alexander v. Alexander, 12 La. Ann. 590; Copse v. Eddins, 15 La. Ann. 528. But this would be true only if there had been a' contract that she should be paid then and not sooner. Such a contract, however, is not shown by the record, as has already been stated. All that appears is that there was an understanding that compensation should be made — the time thereof unfixed. As already stated, the opponent might at any time have demanded immediate payment.
The judgment appealed from is therefore set aside, and it is now ordered, adjudged, and decreed that the opponent, Mrs. Marie Hess, have judgment against the succession of Rev. Magin Palmer for the sum of $1,500, with legal interest thereon from judicial demand, September 16, 1913, and that the account herein filed by the testamentary executor of the said succession be amended by placing opponent thereon for the amount of the said judgment as a privileged creditor of said succession, and that the said succession pay the costs of this opposition.