O’NIELL, Chief Justice.
 

 A woman named Luciana Decou is suing the Succession of Frank Bernard Joublanc and his heirs for wages for services rendered by her as his housekeeper during the last ten years of his life. The heirs are a son and daughter of the deceased. The son was appointed and confirmed as testamentary executor, but afterwards he and his sister accepted the succession unconditionally and were judicially recognized as the heirs of the deceased. , In their answer to the suit they denied that their father was indebted to the plaintiff at the time of his death, and they produced a document in which the plaintiff acknowledged that there was no such indebtedness, eighteen days before their father died. They pleaded that the suit was barred by the prescription of one year, under article 3534 of the Civil Code, relating to suits for servants’ wages or for board and lodging; and that the suit
 
 *127
 
 was barred also by the prescription of three years, under article 3538, relating to suits on accounts. The judge of the civil district court, after hearing the case on its merits, rejected the plaintiff’s demand. She is appealing from the judgment.
 

 The relation of employer and employee, between Frank Bernard Joublanc and Luciana Decou, commenced in October 1928. He was a dairyman, residing at No. 2900 Mandeville Street, at the corner of Agriculture Street, in New Orleans, near the land on which he conducted his dairy business. He was a white man. Luciana Decou is a colored woman and in October, 1928, was a widow with three small children. She and the children were living in a house which she owned, at No. 2716 St. Anthony Street. Joublanc persuaded her to rent out her house and to come and keep house for him. He offered her a home for the family, in his house, which was a double cottage, No. 2900 Mandeville Street. Her son was employed already at Joublanc’s dairy. According to her testimony, which is corroborated by that of three disinterested witnesses, Joublanc promised that, if she would come and keep house for him, he would reward her for her services, at his death, by bequeathing to her the property No. 2900 Mandeville Street. She accepted the employment; moved with her children into one side of the double cottage, No. 2900 Mandeville Street; and kept house there for Joublanc for ten years. She served not only as housekeeper but also as cook and laundress, and as nurse in his spells of illness. In fact she did all of the work about the house, besides attending to a small part of the dairy business.
 

 On the 14th of July 1939, Joublanc made a will, in nuncupative form by private act,, in which he bequeathed to Luciana Decou the property No. 2900 Mandeville Street,, declaring in the will that the legacy was. given: “in consideration of faithful services rendered by her for many years as my housekeeper”. He was confined to his bed by illness from August 8th to September 12th, 1939. On that day his daughter and her husband came and moved him to her home. On the 26th of September, 1939, he made another will, in nuncupative form by private act, in which he bequeathed all of his property to his son and daughter, and declared that he thereby revoked all previous wills. He died at the home of his. daughter on October 2, 1939, leaving an estate valued at $8,670. The property No. 2900 Mandeville Street, being in a very poor and secluded neighborhood, was appraised at only $1,100. When,the son and daughter -asked to be sent' into possession of the estate as the only heirs of the deceased they showed that the net value of the estate, including No. 2900 Mandeville Street, was only $4,320.82.
 

 There are some undisputed facts which indicate that Joublanc, while spending his-last days at the home of his daughter, realized that if he should revoke the will in which he had remembered Luciana Decou for the “faithful services rendered by her for many years” he or his succession would owe her the value of those services. His son testified that on the 14th of September, only twelve days before his father revoked the will, he requested the son to “go to old lady Decou’s” and find out what he owed her for board, nursing, drugs, or for any
 
 *128
 
 other bill that might have been incurred and remained unpaid; and that at the same time he asked his son to get all of his papers which he had left at his house on Mandeville Street, saying “that he 'wanted to straighten out everything”. He made it plain that the place which he referred to as
 
 “old
 
 lady Decou’s” was No. 2900 Mandeville Street, where Luciana Decou had remained. The son went that day to 2900 Mandeville Street and asked Luciana Decou for the papers which his father had left there; and while he was examining the papers he asked her whether his father owed her anything, and she replied that he did not. He asked if she would sign a receipt to that effect, and she said that she would. He took a piece of paper from his pocket and with a pencil wrote the receipt or acknowledgment, thus: “I, the undersigned, hereby state that F. B. Joublanc does not owe me any money for nursing, board, or exts. [perhaps meanings extras], to date.” The instrument is dated September 14, 1939. The young man read it to the woman and she also, apparently, read it, before she signed it. She was not an educated woman but could read and write English. The reason why “board” was mentioned in the instrument was that the woman had furnished all of the provisions for the Jo.ublanc house and had given him three meals a day at her expense. She had managed to do that by conducting a small grocery business for her own account, in a store which Joublanc had built for that purpose, and as an annex to his home. When Luciana Decou was asked on the witness stand to explain why she signed the acknowledgment that Joublanc did not owe her anything, she replied that she meant that he did not owe her for any bills which she had paid for his account; and that she considered that she was compensated for her services by the legacy which he had left to her in his will, dated July 14, 1939. He had given her a copy of the will. It was not revoked until the 26th of September, which was twelve days after she signed the acknowledgment that Joublanc did not owe her anything. It never occurred to her that the testator might revoke the will in which she was to be compensated for the services which she had rendered. As evidence of her ignorance in that respect she refused to surrender possession of the premises, No. 2900 Mandeville Street, after Joublanc died; and when the executor sued to evict her she pleaded that the property was bequeathed to her in the will dated July 14, 1939. Her explanation that, by her written acknowledgment, on September 14, 1939, she meant merely that Joublanc did not owe her for any bills which she had paid for his account, is plausible, because it was her custom to pay his bills, sometimes with her own money and at other times with money which she collected for rent due to him. Her explanation, therefore, as to why she signed the acknowledgment that Joublanc did not owe her “any money for nursing, board, or exts.”, convinces us that she did not intend or mean that Joublanc would not owe her anything for the services which she had rendered, if he should fail to carry out his promise to remunerate her in his will. The fact that she rendered the services, and that he promised to compensate her in his will, is established, not only by the acknowledg
 
 *129
 
 merit in the will'which Joublanc made on July 14, 1939, but also by the testimony of three disinterested and unimpeached witnesses, to whom Joublanc often spoke of his personal affairs.
 

 On the facts which we have found the plaintiff is entitled to collect from the succession of Joublanc, or his heirs, the value of the services which she rendered. One who renders valuable services to another on his promise that in his will he will compensate to the extent of the value of the services the party rendering them" is entitled to collect their value from the succession of. the party for whom the services were rendered if he dies without having fulfilled his promise. Nimmo v. Walker, Executor, 14 La.Ann. 581; Succession of McNamara, 48 La.Ann. 45, 18 So. 908; Succession of Palmer, 137 La. 190, 68 So. 405; Succession of Oliver, 184 La. 26, 165 So. 318. In such cases it is not necessary that the value of the services shall have been agreed upon by the employer and employee. And if the agreement in such a case is that the services shajl be paid for thus only at the death of the party for whom the services are rendered, and shall not be demandable sooner, the period of prescription commences only from the date of his death. Nimmo v. Walker, Executor, supra; Copse v. Eddins, 15 La.Ann. 528; Succession of Palmer, supra; Succession of Oliver, supra. This suit therefore is not barred by prescription.
 

 The plaintiff testified that the services which she rendered and the board which she furnished to Joublanc were worth $2 per day. In her petition she claimed $125 per month. Our judgment is that $2 per day is an outside estimate; besides which an allowance should be made for the house rent which was furnished to the plaintiff and her children, and for rent of the building in which she conducted her grocery. There is no estimate of these allowances in the record. Our conclusion is that the plaintiff ought to have the value of the legacy which she would have received under the will dated July 14, 1939, if it had not been revoked. We do not mean that the general rule in cases like this is that the value of the legacy fixes the amount which the succession will owe if the testator revokes the bequest. On the contrary, the testator might well believe and intend in such a case that the legacy is of sufficient value to constitute a gift, in addition to being full compensation for the services rendered ; and it must be remembered that the testator in such a case has the right to revoke the bequest at any time, notwithstanding it is declared in the will to be made in consideration for services rendered. We are dealing only with the facts of this case, and are resting our judgment upon the proof that the value of the services rendered by the plaintiff was not less than the value of the legacy which she was to receive, and upon the fact that the plaintiff admitted and repeated in her testimony that the legacy which she had expected to receive would be ample compensation for her claim. The only proof that we have of the value of the legacy is- that it was appraised in the inventory at $1,100.
 

 The judgment appealed from is annulled, and it is adjudged and decreed that the plaintiff shall recover of and from the sue-
 
 *130
 
 cession of Frank Bernard Joublanc and his heirs, Loys Edward Joublanc and Mrs. Florence Joublanc Hasperue, Eleven Hundred Dollars ($1,100) with legal interest from the date of judicial demand, March 16, 1940, and the costs of this suit.