MOISE, Justice.
Edwin E. Waldo is appealing a judgment of the Civil District Court for the Parish of Orleans which dismissed his opposition to the payment of $11,000 by the Testamentary Executor of the decedent to opponent’s sister, Miss Odette Waldo, for nursing and personal services rendered by the latter to the decedent, their mother.
Mrs. Odette Francke Waldo died in the City of New Orleans on October 14, 1947, survived by five children: John F. Waldo', her Testamentary Executor, Rudolph H. Waldo, who had acted as her attorney-in-fact during her lifetime, Edwin E. Waldo, opponent-appellant, Miss Carrie Waldo and Miss Odette Waldo. She left a will nuncupative in form by public act, containing the following provisions: “From time to time, I have made advances to my following named children: Odette Waldo, Edwin E. Waldo, John F. Waldo and Rudolph H. Waldo, as evidenced by records in the possession of my son, Rudolph H. Waldo. It is my desire that, in the settlement of my estate, these four children collate the amounts respectively advanced to them. After this collation has been effected, I bequeath all of which I may die possessed, to my five children, Odette Waldo, Carrie F. Waldo, Edwin E. Waldo, John F. Waldo, and Rudolph H. Waldo, share and share alike, hereby constituting them my universal legatees.”
She made no provision that Odette Waldo, who had lived with decedent since 1924, receive any compensation for general services rendered. After the execution of this will in 1936, the decedent suffered sev *291 eral illnesses, through which she was nursed by Odette Waldo.
During the course of the executorship a final account was presented by the Testamentary Executor for approval and homologation. Miss Odette Waldo was listed thereon as a creditor in the sum of $11,000 for nursing and personal services. Opponent herein, Edwin E. Waldo, promptly filed opposition thereto. He also filed a supplemental opposition, in which he attacked an advance of $10 made by the Executor out of the succession funds to Miss Odette Waldo. Included in the final account was the amount of $16,071.18 as a collatable debt, due by Miss Odette Waldo to her mother’s estate (this debt is evidenced by a “Confession of Judgment” executed by Miss Odette Waldo under oath on February 1, 1929.)
No other opposition having been filed within the time allowed by law, on October 18, 1948, the Final Account was approved and homologated insofar as not opposed, i. e., with the exception of the two oppositions filed by Edwin E. Waldo.
In an analysis of the record one could easily pound away at shadows and leave the issue of substance untouched. As a matter of substance, we reiterate that only the oppositions of Edwin E. Waldo were timely filed. We refuse to pursue the shadows, which are as follows: Following the homologation of the Final Account on October 18, 1948, Odette Waldo filed an opposition, .in which she claimed she was a creditor' of the succession in the amount of $19,560 for services rendered the deceased; then she filed a supplemental opposition in which she claimed $13,500 for advances made for maintenance of deceased during the latter’s lifetime; then she filed a second supplemental opposition in which she claimed that (a) the Confession of Judgment executed February 1, 1929, was erroneous, in that it covered amounts which she had not actually owed at that time, and that it had been executed under duress, and (b) if it were held valid, that it was subject to credits, and the present collatable indebtedness should be only $14,680.86.
After a lengthy trial of this matter, the district court dismissed all oppositions of both Edwin E. Waldo and Odette Waldo, and approved the final account as originally presented by the Executor.
The propriety of dismissing these three oppositions of Odette Waldo as having been filed too late is evidenced by the following authorities: Ory v. His Creditors, 12 La. 121; West v. Creditors, 4 La.Ann. 450; Succession of Rabasse, 50 La.Ann. 746, 23 So. 910. Miss Waldo has not taken an appeal from the judgment dismissing her oppositions; and therefore the sole matter of substance to be touched is the appeal of Edwin E. Waldo.
This Court has had before it in recent years several cases in which compensation was sought and allowed for services rendered to decedents: Succession of Ges *293 selly, 216 La. 731, 44 So.2d 838 (services rendered by a nephew to an aunt); Succession of Joublanc, 199 La. 250, 5 So.2d 762, and Succession of Oliver, 184 La. 26, 165 So. 318 (services rendered by strangers, not related to the decedents). In Muse v. Muse, 215 La. 238, 40 So.2d 21, compensation was sought by a son for services rendered his mother, and denied for lack of proof of an express or implied promise to pay on her part.
The established jurisprudence, as stated in Muse v. Muse, supra, is that, where a parent is not in a penurious condition, “the services rendered by the child are presumed to be gratuitous in the absence of an express or implied promise on the part of the parent to pay.” 215 La. 238, 242, 40 So.2d 21, 23. Where such promise or intent can be established and the nature of the services performed is proven, the Court will proceed, to the question of quantum.
Miss Odette Waldo testified, as did her brother Rudolph (Tr. pp. 296, 302), that the $11,000 figure in dispute was a compromise figure, representing an attempt to settle her claims amicably. In her opposition, in which she claims $19,560 for her services, she itemizes them as follows:—
(1) $12,000 for general care and companionship from 1924 to Oct., 1944.
(2) $7,560 for general care, nursing and housekeeping from Oct., 1944 to Oct., 1947.
Although we- affirm the dismissal of her opposition wherein this evaluation is set forth, we shall use it as a basis for quantum meruit in ascertaining whether the evidence warrants a finding that $11,000 worth of services were rendered.
Bearing this in mind, we are of the opinion that the record does not substantiate the claim of $12,000; for a study of the testimony convinces us that the daughter received as much from the mother as she gave, during the twenty-year period, 1924-1944.
The second portion of Odette Waldo’s claim represents an evaluation of certain services at $210 per month for the last three years of the decedent’s life.
The mother died of cancer of the rectum. Her physician, Dr. Philip Jones, Jr., testified that:
“She had an attack of pneumonia in March of 1945, and following that it became evidence (evident) that she was ill with the disease that eventually caused her death * * * Carcinoma of the rectum * * She was senile and she needed care, more or less, constantly, from the time of the pneumonia on. Previous to the pneumonia she was an individual who was suffering from hypertension and from the effects of age, and she was best off under intimate care * *
“Q. * * * could you tell whether she required constant nursing or constant attention in 1946? A. Yes. She was requiring paregoric to alleviate the colon symptoms, and the colon symptoms were continuous and very annoying and required lots of care on the part of whoever was taking care of her * * * The symp *295 toms in that case were the usual symptoms of cancer of the rectum. There was a diarrhea which was controlled with difficulty. There was some loss of blood. There was a progressive weakness, and towards the last year and a half or perhaps two years pain became a constant factor. The patient’s nutrition was maintained with difficulty, and very largely the result of successful catering, and the illness stretched out about two and one-half years when ordinarily such a person would not quite last that long — maybe even less than that * * * The evidence for the carcinoma was brought out in March, 1945, and this evidence was the passing of blood back in August of 1944. So we date the onset of the cancer from August, 1944. Now, actually, that is the time the blood appeared and that is pretty safe to reason that when the blood appeared the cancer appeared * * * I don’t think she (decedent) could attend to any of her wants satisfactorily. She was not adequate to that * * * What I saw was that she was incontinent; she was on many occasions too feeble * * * That was from about the time of the pneumonia on. There were periods her strength rallied, and periods of time she was a very feeble invalid.” The nature of the personal services which the decedent required during the last years oí her life, according to the testimony of both her physician and her daughter, Odette, is further corroborated by Rudolph H. Waldo (Tr. 246-47-48.) In addition to the intimate services of a practical nurse, which Odette performed and has evaluated at $150 a month (a conservative estimate according to Rudolph H. Waldo and Miss Janey Marks, a cousin), she also cleaned house, cooked meals for the decedent, laundered decedent’s underwear and nightdresses, and carried 8 or 9 hampers of wood upstairs to decedent’s bedroom daily. We think that these services were well worth $2 per day, or $60 per month. The aggregate of $210 monthly ($150 for practical nursing and $60 for general care), or $7,-560 for the three-year period, 1944-1947, is a fair and reasonable quantum
There remains for consideration the question of the decedent’s intent to pay for these services. Rudolph H. Waldo, who had been her attorney-in-fact, testified that she had said: “Sister (i. e., Odette) should be compensated for all the services she rendered to me.” “Be sure and pay her for her services.” As a matter of fact, he had begun to pay to Odette for that purpose, and prior to their mother’s death, amounts total-ling $350, which he testified had never been considered total compensation but had been paid as funds were available, over and above the ordinary living expenses which his mother required and which were discharged out of her very modest revenues.
For the reasons assigned, the judgment appealed from is amended by decreasing the amount to be paid Odette Waldo from $11,-000 to $7,560, subject to' a credit of $350, and subject to a credit of $10 advanced from funds in the hands of the executor, to *297 which the supplemental opposition filed by Edwin E. Waldo was directed; and as thus .amended, the judgment is hereby affirmed, •each party to bear his own costs.
PONDER, J., dissents.