NORRIS, Judge.
Plaintiffs, Elaine Roberts Moore and Clarise Roberts Hutcherson appeal from the decision denying them judgment against their stepfather, Thomas Bodan Smith.
The facts are not disputed on appeal. Gladys Marie Smith, wife of the defendant and mother of the plaintiffs, died January 29, 1975. In her will she left all her property to Smith. However, the two daughters were forced heirs. Defendant and plaintiffs would have been the joint owners of three pieces of immovable property, as well as some movable property. Mr. Smith complained to the plaintiffs that he was unable to “deal with” the property because it was jointly owned. Plaintiffs agreed that they would renounce their interest in their mother’s succession, and defendant would in turn leave the land to them upon his death. On September 22, 1976, the plaintiffs performed their share of the agreement. They executed a renunciation prepared by Smith’s attorney, in which they renounced the succession of their mother, Mrs. Gladys Marie Carter Smith, and each and every right [including that of reduction] which they might have therein or thereto as an heir or legatee. On the same day Smith made a will in which he left the plaintiffs all the property of which he would die possessed. Gladys Smith’s will was probated and the defendant Smith was put in possession of all the property May 4, 1977.
On June 7, 1977, Smith remarried. December 8 of that year he changed his will, leaving everything to his new wife. Plaintiffs did not learn of this new will until October 16, 1984. The defendant also disposed of two of the three pieces of immovable property at some time prior to trial.
Moore and Hutcherson filed suit against the defendant, asking that the renunciation be set aside and that they be granted a money judgment against the defendant for their interest in the property disposed of.
The trial judge found that “the circumstances of the renunciation was just as related by Mrs. Moore and Mrs. Hutcher-son,” that there was an agreement that the plaintiffs would renounce their interest in the property and defendant would leave it to them when he died. He concluded that even though Smith’s agreement was unenforceable, and the plaintiffs’ agreement invalid, the renunciation was not invalid.
Plaintiffs appeal, arguing the trial judge’s decision was erroneous as a matter of law.
The factual situation described results in an intricate tangle of prohibited acts. The plaintiffs’ renunciation was conditional, which is forbidden by LSA-C.C. art. 1016; the defendant’s agreement to leave them the property was a contract dealing with the succession of a living person, prohibited by LSA-C.C. art. 1976 (previously arts. 1887, 1888) and the entire contract was invalid because the object was illegal. LSA-C.C. art. 1976.
The difficulties can be solved by focusing first on the most basic issue, whether there was a valid contract between the parties.
A contract dealing with the succession of a living person is null. LSA-C.C. art. 1976; Jackson v. United Gas Public Service Co., 196 La. 1, 198 So. 638 (1940), cert. denied 311 U.S. 686, 61 S.Ct. 63, 85 L.Ed. 443 (1940); Roy v. Roy, 382 So.2d 253 (La.App. 3d Cir.1980).
The law does not permit persons to make contracts as to successions not yet open.... The suspicion which is raised against a contract regarding future successions is very old; they were already prohibited in Roman law (Code, Bk. II, tit. 3, law 30). They were considered as immoral because the parties speculated on the death of a living person who was ordinarily one of their relatives, and in addition, as dangerous because they could engender in the minds of parties the thought of crime to hasten its commission. Those motives are extremely feeble.... The nature of the motives on which the prohibition on agreements regarding future successions is founded is such, that the nullity which sanctions it is a matter of public order; it is an absolute nullity which can be invoked by any of the interested parties. 2 Planiol, *744 Traite Elementaire de droit civil (LSLI Trans. 1959) Nos. § 1012, 1013, 1015.
In determining the effects of a null contract, we look to LSA-C.C. art. 2033.[1] In pertinent part, it provides:
An absolutely null contract, or a relatively null contract that has been declared null by the court, is deemed never to have existed. The parties must be restored to the situation that existed before the contract was made. If it is impossible or impracticable to make restoration in kind, it may be made through an award of damages.
This parallels the line of cases holding that when one party performs in reliance upon a prohibited, but good faith, contract that party should be afforded recovery to the extent of losses sustained or expenses incurred, without profit. Coleman v. Bossier City, 305 So.2d 444 (La.1974); Davis v. Franklin Parish School Board, 412 So.2d 1131 (La.App. 2d Cir.1982).
Similarly, it has long been recognized that, “One who renders valuable services to another on his promise that in his will he will compensate to the extent of the value of the services the party rendering them is entitled to collect their value from the succession of the party for whom the services were rendered if he dies without having fulfilled his promise.” Succession of Palmer, 137 La. 190, 68 So. 405 (1915); Succession of Oliver, 184 La. 26, 165 So. 318 (1936); Succession of Joublanc, 199 La. 250, 5 So.2d 762 (1941); Succession of Gesselly, 216 La. 731, 44 So.2d 838 (1950); Succession of Napoli, 286 So.2d 392 (La.App. 4th Cir.1973). Analysis of this line of cases reveals that it is based on the theory of quantum meruit. Succession of Palmer, supra; Succession of Oliver, supra.
We have questioned whether the defendant might rectify the whole situation by simply changing his will again at some later date and re-establishing the plaintiffs as his legatees. Admittedly, the prospect of a change of heart might bring the arrangement within the realm of an aleatory contract for the plaintiffs, LSA-C.C. art. 1912 (previously arts. 1776, 2982), and seem to satisfy the equities of the transaction. However, we do not think this is a valid argument. First and foremost, the subject matter of the contract is illegal so any attempt to comply with it would probably be without effect. Furthermore, Mr. Smith’s performance would appear to be subject to a purely potestative condition. Such a condition is null, LSA-C.C. art. 1770 (previously arts. 2024, 2034, 2035), and cannot deprive Mr. Smith of his testamentary freedom. LSA-C.C. art. 1470.
We have also questioned whether the second paragraph of article 2033 might disqualify the plaintiffs from recovering the value of their performance. The article provides:
[[Image here]]
Nevertheless, a performance rendered under a contract that is absolutely null because its object or its cause is illicit or immoral may not be recovered by a party who knew or should have known of the defect that makes the contract null. * * *
If the plaintiffs knew that the contract was prohibited, they could not be allowed to assert their wrongdoing to claim a benefit from it. However, the record is completely void of evidence to support the supposition that the plaintiffs knowingly embarked on an illegal scheme. In fact, during the negotiations, Mr. Smith was represented by counsel who drew up the documents and was perhaps aware of the contract; the plaintiffs were not represented. If anyone should be charged with knowledge that article 1976 would invalidate the transaction, it is Mr. Smith. This is clearly not a case of the plaintiffs “alleging their own turpitude.”
It is impossible to restore the parties to the situation that existed before the contract was made. As the appellee emphasizes, the plaintiffs could not revoke their renunciation once it had been accepted by other heirs. LSA-C.C. art. 1031.
Defendant argues that this article prevents the plaintiffs from receiving any re *745 lief. However, the plaintiffs will not be required to revoke their renunciation. Defendant is the owner of all the property listed in Gladys Smith’s succession, and the orderly disposition of the estate by the will and the act of renunciation will remain intact. The sanctity of the public records is preserved and the rights of third parties are in no way affected. See Flanner v. Succ. of Manner, 338 So.2d 355 (La.App. 3d Cir.1976), writ denied 340 So.2d 999 (La.1977).
The plaintiffs, however, will not be denied their right to recover the losses they sustained through fulfilling to their detriment an obligation under a contract that was null. LSA-C.C. art. 2033. Since they cannot be restored to their former status as owners in indivisión of their mother’s succession, the most appropriate award is one of money damages for what their share was worth. At the time of their mother’s death, appellants were entitled to one half of their mother’s succession as forced heirs. LSA-C.C. art. 1493. The only evidence introduced detailing the value of the succession at the time of plaintiffs' renunciation is the sworn detailed descriptive list prepared by defendant in the proceedings entitled “Succession of Gladys Marie Carter Smith”, No. 108,786, Fourth District Court. Defendant did not object to this evidence. The detailed descriptive list showed the net value of the estate to be $11,839.59. Plaintiffs’ one half equals $5,919.79 and they are entitled to judgment for that amount.
We reverse the judgment of the trial court and render judgment as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiffs, ELAINE ROBERTS MOORE AND CLARICE ROBERTS HUTCHERSON, and against the defendant, THOMAS BODAN SMITH, for the sum of $5,919.79, with legal interest from date of judicial demand until paid.
Costs at the trial court[2] and on appeal are assessed to the appellee.
REVERSED AND RENDERED.

. This is a new article but does not change the jurisprudence. See former LSA-C.C. art. 1791.

. LSA-C.C.P. art. 1920.