Plaintiff brought this suit against the executor of the above estate to recover the sum of $875 for nursing and attending the deceased, her father, from May, 1941, to the date of his death in May, 1944, with the exception of one month of said period. She alleges that her services were well worth the sum of $25 per month. The executor filed an answer to the petition in which *Page 186 
he denied that plaintiff nursed her father as alleged and denied that she is a creditor of the succession. He averred that plaintiff lived with her father prior to his death and the latter paid the household expenses for himself, plaintiff and her husband, and paid plaintiff $10 per month, all of which more than compensated plaintiff for any services she rendered her deceased father. The executor also pleaded the prescription of one and three years.
The case proceeded to trial and after the testimony of plaintiff was heard, the executor filed an exception of no cause or right of action, based on the ground that plaintiff's testimony showed that during the time she rendered the services she was married to John Theriot. The exception was referred to the merits, and the trial of the case was proceeded with and concluded on February 9, 1945, whereupon the case was set down for argument on February 20th. On February 16th, John Theriot, plaintiff's husband, filed an intervention in the suit in which he alleged that he was interested in the outcome of the suit and desired to join with the plaintiff in asserting her claim; that the services which his wife rendered the deceased were performed during the existence of the community of acquets and gains existing between them; that his wife filed the suit with his full authority and under a verbal mandate from him to recover the amounts due the community; that, since the case had already been tried and in order that no delay might be caused, he submitted the matter on the record as made.
On the same day the plaintiff filed a supplemental and amended petition in which she alleged, in substance, that the amount due for her services was a community claim and that she filed the suit under a verbal mandate from her husband, and she annexed to her supplemental petition an affidavit of her husband verifying her statements.
The executor filed an exception to the intervention of the husband on the ground that it came too late and set forth no cause or right of action. He also filed an exception to the supplemental petition on the ground that it altered the substance of the demand and attempted to substitute another plaintiff.
The court overruled these exceptions and rendered a judgment against the executor for the amount claimed in favor of the plaintiff and her husband, "for the benefit of the community existing between them". The executor appealed from this judgment, and after the appeal was taken but before the bond was filed, answered the petition of intervention and the supplemental petition.
[1] The first question to decide is whether or not the exceptions filed by the executor should have been sustained. There is no question but that the claim sued on was a community asset, and the husband was the proper person to prosecute and recover the claim. From a strictly legal standpoint, the exception of no right of action filed by the executor at the conclusion of Mrs. Theriot's testimony should have been sustained and her suit dismissed, as it is obvious that, as the matter then stood, she had no right to stand in judgment in the collection of a community debt.
[2, 3] After the exception was referred to the merits and the trial concluded, the husband attempted to correct the situation by filing an intervention in the suit and joining his wife in asserting the claim. Assuming that the effort of the wife to amend her petition came too late and was unavailing, we think the intervention, under the circumstances, should be sustained. Articles 389 and 390 of the Code of Practice permit a third person who has an interest in the subject matter of the suit to intervene therein and join the plaintiff in claiming the same thing, or something connected with it. There is no restriction on the time this intervention may be filed just so it does not retard the principal suit. The intervenor must be always ready to exhibit his testimony. C.P. art. 391.
In this case the intervenor indicated a willingness to submit his intervention on the evidence in the record, and there was no occasion for the suit to be retarded. In fact, it was not delayed by the intervention as the judge decided the case on the same day that it would otherwise have been argued and submitted. Therefore, on the day that the matter was decided the trial judge had a right to consider the intervention, and to consider the husband in court asserting a claim due the community and submitted on evidence already in the record.
[4] The husband was bound by his judicial allegations in his petition, and if there was a claim due the husband as head of the community a payment to him by the executor would fully protect the executor. The executor was not prejudiced by the intervention *Page 187 
as he has not shown, nor does it otherwise appear, that he had any defense to urge against the husband that he did not urge against the wife. From a strictly legal standpoint, if the trial judge found that the amount was due the community, the judgment should have maintained the intervention and granted judgment in favor of the intervenor and dismissed the suit of the wife. However, since the husband is a party to the suit and is bound by the judgment, the irregularity is of no importance.
 Merits
The testimony shows that the deceased was an elderly man and had been declining for several years before his death. For the last three years of his life his health was bad requiring him to stay in his home most of the time. He was in need of attention, although he was not bedridden. He owned his home and appears to have had other means. He had a large number of children who were grown and had left home, except Mrs. Theriot who had married a few years before her father's death and lived in the house with her father and her husband. The household expenses were paid by the father, his daughter and her husband jointly, with no specific agreement as to how much each was to furnish. The father did buy at least one third of the groceries and supplies for running the house, and there is no question but that the daughter gave her father the service and attention due by a child to a sick parent.
[5] Services rendered by a son or daughter to a parent in the way of nursing and attention to the physical needs of the parent are presumed to be gratuitous. In the case of Farrar v. Johnson et al., 172 La. 30, 133 So. 352, 353, a son claimed remuneration out of the estate of the deceased father for nursing him and attending to his affairs during his illness, and the court in denying the son's claim for this service said: "There is always a presumption, when such services are rendered by a son or daughter to the parent, that the services are gratuitous; and the law will not allow compensation in such cases without proof of a promise or expressed intention on the part of the parent to pay for the services."
Neither the daughter nor her husband claims that the deceased made any specific promise to pay for the services of the daughter in attending him. The father paid a small amount to cover the automobile expense of Theriot in going to and from his work so that the daughter and her husband could stay at the home of the deceased and give him attention.
[6] Where a person renders valuable services to another under the promise that these services will be rewarded after the death of the person to whom the services are rendered either in his will or out of his estate, the person rendering the services is entitled to recover from the succession of the person to whom the services were rendered the reasonable value of the services where there has been no specific amount agreed upon and no remuneration has been made for the services. Succession of Joublane, 199 La. 250, 5 So.2d 762; Succession of Oliver, 184 La. 26, 165 So. 318.
The only testimony in this record going to show that there was an understanding on the part of the deceased to remunerate his daughter for the services rendered him is her statement that, in February, 1941, he promised her that he would will her his home. So far as the record shows, he did not will his daughter anything.
Section 2 of Act 11 of 1926 provides that parol evidence shall not be admissible to prove any debt or liability on the part of a deceased, if a suit is brought within twelve months after the death, unless the parol testimony consists of at least one credible witness of good moral character besides the plaintiff; or unless it be to corroborate a written acknowledgment or promise to pay signed by the debtor.
The serious question in the case is whether or not the testimony of the claimant has been sufficiently corroborated by a credible witness as required by the above act so as to fix a debt or liability against the succession of the deceased. In the Succession of Peres, La. App., 174 So. 128, it was held that the provisions of the act were not complied with by proof of corroborative circumstances. As the services rendered by the daughter to her father are presumed to have been gratuitous, it follows that the only way she could recover for these services was to show that the deceased intended to remunerate her for these services. Had she only shown that she rendered the services, that they were needed, and that the amount claimed is reasonable, obviously, she would have no claim against the succession, as these services would be presumed to be gratuitous. *Page 188 
Therefore, as the alleged promise of the deceased to will the claimant his home in payment for her services is not proved by another credible witness other than claimant, it might be seriously contended that the testimony of the claimant on this point must be corroborated by a credible witness in order to satisfy the terms of the act; that proof of the rendering of the services, their need, and the correctness of the amount claimed would only be corroborative circumstances.
[7] However, we do find that there is sufficient proof to show that the deceased intended to reward his daughter for her services, and the presumption that her services were gratuitous is destroyed. In the first place, the executor in his answer states that the deceased paid her $10 per month for these services in addition to furnishing her and her husband a home, etc. While the proof shows that the deceased did not pay the claimant anything for nursing him, but only paid the car expense of her husband in going to his work, still the fact remains that the admission made by the executor in his answer shows that these services were not gratuitous.
And in the second place, the fact that the deceased paid two of his other daughters for doing the same thing that the claimant did is indicative of an intention on his part that the services were not to be given without any remuneration. There can be no question but that the deceased needed these services and the claimant faithfully attended to her needy father, and had she not rendered him the services she did, it would have been necessary for him to pay some one else for the same services far more than she is claiming.
In support of our conclusion to the effect that plaintiff's claim is properly supported and her testimony sufficiently corroborated in addition to the cases of Succession of Joublanc and Succession of Oliver, supra, we refer to the following cases: Succession of Ritter, La. App., 158 So. 699 and the Succession of Peres, La. App., 174 So. 130.
[8] The pleas of one and three years prescription are not well founded for the reason that the claim did not accrue until the death of the deceased. Where the services rendered the deceased are continuous up to his death and are expected to be compensated in the will of the deceased but are not so compensated, prescription does not begin to run until after the death of the deceased. Succession of Joublanc and Succession of Oliver, supra. While there are some earlier cases, Succession of Dolsen, 129 La. 577, 56 So. 514, and Succession of Palmer,137 La. 190, 68 So. 405 holding that the services of a nurse rendered a deceased are prescribed in one year, and she can only recover for the last year's services, the later cases are controlling on the question of prescription presented in this case. The suit was filed within a year after the death of the deceased, and the claim having accrued only at his death, it is clear that prescription had not run when the suit was filed.
For the reasons assigned, the judgment appealed from is hereby affirmed at appellant's cost.