This suit was instituted by Lloyd H. Holley to recover damages to an automobile which, he alleges, was his property, in a collision with a Reo Truck owned by the Butler Furniture Company, Inc., and operated at the time by its employee, William Polk. The amount of the damages claimed is in the sum of $223.11.
The collision is alleged to have taken place on October 19, 1946, at about 11 o'clock P.M., at the intersection of Gracie Street with North 22d Street in the City of Baton Rouge. The suit is directed against the alleged owner of the truck, its driver and the liability insurance carrier, Insurors Indemnity and Insurance Company.
The case was put at issue by the joint answer filed on behalf of all three defendants in which it was admitted that William Polk was the employee of the Butler Furniture Company, Inc., and further that that company did, on October 19, 1946, own a Reo Truck which was involved in an accident with an automobile that was being operated by the plaintiff, Lloyd R. Holley. Otherwise, the answer may be said to be a denial of all of the other allegations of plaintiff's petition, especially those relating to the manner in which the accident occurred and in which the driver of the Reo Truck is charged with the negligence that is said to have caused the accident.
The case having thus been put at issue was, on March 25, 1948, taken up for trial in open court in the District Court of East Baton Rouge Parish. During plaintiff's examination as a witness, it developed that the car which he was driving on the day of the accident did not belong to him but belonged to his father, Marvin H. Holley. It was further made to appear that he did not pay for the repairs that are sought to be recovered in this suit brought by him, but that they were paid for by his father, the owner of the car.
After that testimony had been adduced, counsel for the defendants filed an exception of no cause of action and in the alternative an exception of no right of action on the part of the plaintiff against them or any of them.
After the filing of those exceptions plaintiff appeared in court through his counsel to file an amended and supplemental petition in which he made the same allegations with reference to the accident as he had made in his original petition but added further allegations to show that the car he was driving was owned by his father, Marvin H. Holley, and that he was using the same with the express consent and approval of his father. Further he alleged that his father paid for the repairs to the automobile but that he, plaintiff, recognized a moral obligation on his part to repay him for all of his expenses and losses resulting from the collision. He alleges also that he did not know that, as a matter of law, the suit should have been brought in the name of the owner of the car and that he inadvertently failed to inform his attorneys that his father, not he, was the owner. All of this, he alleges, was not done with any intent to misrepresent the facts or to mislead anyone. Finally, he alleges that he filed this suit with the consent and approval of his father and that he had an oral mandate from him authorizing him to prosecute the suit and recover the damages sought, with the understanding that any sum recovered was to inure to the benefit of his father.
On the same day that plaintiff sought to file this supplemental and amended petition there was also filed a petition of intervention *Page 478 
on behalf of his father, Marvin Holley, in which practically the same allegations as are contained in the supplemental and amended petition are made and in which it is further pleaded, in the alternative, that the suit filed originally by the plaintiff fully apprised the defendants of the claim that was being made against them and interrupted prescription on all claims arising out of said accident in favor of any and all persons having a right to assert any.
As appears from the extract of the minutes of court, on the day that the exceptions of no cause and no right of action were set for hearing, and after the same had been argued and taken under advisement by the court, the defendants objected to the filing of the supplemental petition, which matter was set for hearing at a later date. That matter was duly heard on the day assigned and, we take it, that at the same time there was also an objection to the filing of the petition of intervention on the part of Marvin H. Holley. The court took these matters under advisement, and later rendered judgment in favor of the defendants, sustaining the exception of no right of action and denying plaintiff the right to file his supplemental and amended petition. The intervention filed by Marvin H. Holley was dismissed in the same judgment. The exception of no cause of action filed by the defendants was over-ruled. It is from that judgment that both plaintiff and the intervenor, Marvin Holley, have taken this devolutive appeal.
In this court we do not find the defendants complaining of the ruling of the trial court which over-ruled the exception of no cause of action and it seems as though we are concerned only with the exception of no right of action which is based on Article 15 of the Code of Practice. That article provides in specific terms that "An action can only be brought by one having a real and actual interest which he pursues, but as soon as that interest arises, he may bring his action." The plaintiff in this case did allege in his petition as though he had a real and actual interest to prosecute an action against these defendants but it developed very early in the trial of the case that he did not have such interest and consequently was in no position to bring it. The application of that article to the situation which was presented was made evident. Counsel for plaintiff evidently realized this and sought to evade its provisions by attempting to file the supplemental petition in which they tried to make it appear that the plaintiff, although not having himself a real and actual interest in the matter, was acting for or on behalf of the party who did have such an interest, on what was alleged to be an oral mandate. The question that is presented therefore, is whether a right of action, under those circumstances, can be maintained.
Counsel seem to rely for their main support on this point on two cases which are discussed in the brief. The first is that of Smith v. Atlas Steam Cordage Co., 41 La. Ann. 1, 5 So. 413, 414. We have examined that case and find the principal point involved was whether the defendants in the suit could up-hold and maintain a reconventional demand against a non-resident corporation on a claim which had no connection with the original demand of the litigation. The matter came to the attention of the court after it had been made to appear by answer to interrogatories propounded to the plaintiff that he had no interest in claiming the amount of overdue coupons which were the object of the suit as they were the property of L. Waterbury Co. of New York. Upon such a representation, the contention that arose was whether Waterbury Co. could be considered as a party before the court and whether the court had jurisdiction over it on a reconventional demand which had been set up against it.
We do not quite understand from the statement of the decision, exactly what was the relation between the plaintiff Smith and Waterbury Co. but would infer from some of the language used that Smith was shown to have been the agent of the company and had been authorized to bring the suit. In its statement of the proposition of law on which it relied in deciding the point involved, the court said: "It is established beyond possible dispute, that when one sued as the agent ofanother, whether this is done avowedly ab initio, or is subsequently *Page 479 
ascertained, he is not the party plaintiff, but that his constituent, for whose benefit he acts, occupies the attitude of real plaintiff in the case." (Italics ours.)
Counsel for plaintiff can perhaps find some comfort in the language used when the court stated that even when the agency of the plaintiff is ascertained subsequently, he is not, but his constituent is the real plaintiff. However we would judge that the facts developed in that case concerning the question of plaintiff's right to represent his constituent, although not made to appear in the decision of the court, were stronger than they are here because the facts alleged in the supplemental petition of the plaintiff and in the petition of intervention of plaintiff's father impress us as being in the nature of an afterthought.
The words "oral mandate" under which this suit is now sought to be up-held, as filed, were very probably prompted by the words "verbal mandate", as used in the case of Succession of Berthelot, La. App., 24 So.2d 185, which decision is also strongly relied upon by counsel for plaintiff and intervenor. In that case however, the point was whether a wife, living under the regime of the community with her husband, was the proper party to bring suit against the estate of her father for a nursing debt. The services were rendered during the existence of the community and it was contended, and properly so, that a claim for them could only be made by the husband as the head and master of the community. After the wife had presented her claim in an opposition to the account filed by the administrator of the succession, and the same had been tried, an exception of no cause or right of action was filed whereupon the same proceedings were carried on as are being carried on in this case. The wife filed a supplemental petition claiming that she had a "verbal mandate" from her husband to bring the suit and the husband filed an intervention joining his wife in the allegations she had made. That case, however, presents a different legal situation from the one that is presented in this case. The relation between the parties was different and as the debt sued for was one belonging to the community, both the husband and the wife had a joint interest in presenting it. Whilst it is true that on some other provision of our law the husband, as master of the community, was the proper party to bring the suit, it is also true that under our community law, the wife had an interest in making the claim. After it appeared that her claim had been brought improperly, in her name, all that her husband did was what the law required him to do, that is to lend his name to the litigation and to obtain the judgment which was properly rendered in favor of both himself and his wife, together. In the case before us certainly no such relation existed between the plaintiff and his father and certainly also, no judgment could be rendered in favor of both of them together, as was done in the Berthelot case.
As against these authorities on which counsel for plaintiff rely, we are confronted with the decision of the Supreme Court in the case of Ritsch Alluvial Land Co. et al. v. Adema et al.,211 La. 675, 30 So.2d 753, which is the decision cited by the defendants as disposing of the question at issue.
The matter presented to the court in that case first appeared on a writ which had been granted by the Supreme Court on the refusal of the trial judge to order the plaintiff to comply with a subpœna dueces tecum. That case is reported in State ex rel. Adema v. Meraux, 191 La. 202, 184 So. 825. The defendants in the first suit had filed an exception of want of interest after they had denied that plaintiff was the owner of the land that was involved in the litigation. That exception apparently was never ruled on but after the case had been set for trial, in order to sustain the motion to dismiss on the ground that the plaintiff was not the owner of the land and therefore had no interest in bringing the action, defendants filed a motion for a subpœna duces tecum asking the attorney for plaintiff to produce in court, a certain written instrument which, it was alleged, would show that the plaintiff had disposed of the land in question. It was on the district judge's refusal to order the subpœna that the matter went to the Supreme Court on a writ. The Supreme Court ordered the district judge to have the writ issued and it was no doubt *Page 480 
on the production of the instrument that the case was subsequently tried on the question of whether or not the plaintiff was the owner of the property and as such had a real interest in bringing the suit. That is the case which later was decided by the Supreme Court in favor of the defendants on that very issue.
After the instrument, which was a quitclaim deed, had been produced, as ordered, the defendant renewed the exception of want of interest and of no right of action on the part of the plaintiff who had filed the suit. In that case there was also filed a plea of prescription against the assignee of the plaintiff, Lenmark Lands, Inc., also a plaintiff in the second suit. The court seemed to have been rather particular in stressing the language of Article 15 of the Code of Practice. It appeared that the plaintiff Ritsch Alluvial Land Company was urging that since it had obligated itself, by contract, to permit its assignee to use its name in prosecuting any suit relative to the land involved in the sale, that it had a sufficient interest in the litigation to satisfy the requirements of Article 15, C.P. The court found no merit in the contention made. It stated that the mere "passive action" required of the plaintiff by the contract referred to, did not create an interest in it in the subject matter of the litigation. "To sustain this contention [211 La. 675, 30 So.2d 755]," said the court, "would render Article 15 of the Code of Practice meaningless."
It would seem, from the statement of the court, that there was some ground for the contention made as there appeared to have been some sort of understanding between the plaintiff Ritsch Land Company and its vendee or assignee of the land, regarding the use of its name in any litigation over the lands conveyed by it. To that extent we would say there was more merit in the point made than there is in the case before us and still, as we see, the court held that the mere passive action required under such an agreement was not sufficient to create an interest such as is contemplated by Article 15 of the Code of Practice in the plaintiff to bring the suit. That case is decisive of the issue that is presented to us in the present suit and bars the plaintiff's right of action.
As relates to the intervention filed on behalf of Marvin H. Holley, the only point to be considered is the one to the effect that under our jurisprudence, a petition for intervention either stands or falls with the main demand. As the judgment rendered in this suit, sustaining the exception of no right of action is correct, that necessarily means that plaintiff's suit must fall and it follows that the petition of intervention must fall with it. See Erskine v. Gardiner,162 La. 83, 110 So. 97, and authorities therein cited.
We think that the principal concern of counsel for plaintiff in this suit is whether a subsequent suit filed on behalf of the real party who would have an interest, that is, Marvin H. Holley, would be subjected to a plea of prescription since more than two years have elapsed since the date of the accident causing the damage. As a matter of fact, they close their brief by stating that if we should dismiss his petition of intervention that we also hold that plaintiff's original suit interrupted prescription in favor of Marvin H. Holley who would still be able to institute a separate action to recover the damages claimed. We note that in the Ritsch Alluvial Land Co. case, the Supreme Court held that prescription had run against the intervenor. However, in that case a plea of Prescription had been filed and the court was called on to act upon that plea. There is no such plea filed in this case and any action taken on that matter would be premature.
For the reasons stated, the judgment appealed from is affirmed at the costs of plaintiff, appellant herein.
DORE, J., recused. *Page 543