131 So.2d 913 (1961)
Audrey M. STORY et ux.
v.
Willie E. STORY, Administrator of the Succession of Mattie Webb Ott.
No. 5239.
Court of Appeal of Louisiana, First Circuit.
June 30, 1961.
*914 J. Douglas Nesom, Denham Springs, for appellants.
Henry A. Mentz, Jr., Hammond, for appellee.
Before ELLIS, LOTTINGER, JONES, HERGET and LANDRY, JJ.
JONES, Judge.
Audrey M. Story and his wife, Eula Graham Story, brought this suit against the Administrator of the Succession of Mrs. Mattie Webb Ott, deceased mother of plaintiff, Audrey M. Story, to recover the sum of $5,535 for nursing services and board and lodging furnished decedent, Mattie Webb Ott, from December 4, 1954, to her death on March 3, 1957. From a judgment of the District Court rejecting their demands they have perfected this appeal.
Plaintiffs alleged that the personal and nursing services rendered by Mrs. Eula Story were worth $180 per month and that a reasonable value for board and lodging furnished the decedent was $25 per month. They alleged that during the period plaintiffs attended and kept Mrs. Ott in their home, she was seriously afflicted in both body and mind and that during a major portion of the period she was completely and utterly helpless and an invalid. They went on to allege that, other than state institutions, there was no other person who could or would render the services so vitally needed by the decedent.
The Administrator filed an answer to the petition denying all of the allegations contained therein. He averred that during the 27 months which plaintiffs claimed they kept and attended to Mrs. Ott the decedent spent only 20 months of that time in the plaintiffs' household and under their care. The following is an extract from the Answer *915 wherein the Administrator admits plaintiffs were paid or compensated for their services:
"8.
"That during the period aforementioned, Mrs. Mattie Webb Ott was receiving $68.00 per month from the State Department of Public Welfare, together with the sum of $30.00 per month as rental for the house listed in the inventory, that said $98.00 per month was received and used by Audrey M. Story and Mrs. Eula Graham Story for whatever purposes they wished.
"9.
"That the sum of $98.00 per month is a reasonable and adequate remuneration for the services rendered by plaintiffs to the decedent.
* * * * * *
"11.
"That the $98.00 per month received by plaintiffs was full and adequate payment to them for said services and plaintiffs are without cause or right of action to collect twice for these services."
The testimony reflects that Mrs. Mattie Webb Ott was an elderly lady with declining health when she came to live with the plaintiffs in December, 1954. She was diabetic and suffered with "hardening of the arteries." She had a large number of grown children and owned her home. Prior to her going to live with the plaintiffs, her son, Bailey Ott, and his wife lived with her at her home from October, 1946, until June, 1953. In July, 1953, her daughter, Mrs. Stella Ott Perrault, moved into decedent's residence and lived with her until October, 1954. When decedent contacted Mrs. Perrault in connection with the latter coming to live with her, she advised Mrs. Perrault she had talked with all of the children and they had agreed that if Mrs. Perrault would live with decedent, the latter would give her the place or residence. Mrs. Perrault accepted the offer and moved in with her mother. Mrs. Perrault testified that prior to her moving in with decedent, she and her mother discussed the transfer of her mother's property to her with an attorney in Denham Springs, and they were advised by the attorney that decedent could not give away or donate all of her property. Nevertheless, when Mrs. Perrault moved from decedent's residence, a son, Alvin Ott, contacted plaintiff, Eula Graham Story, about the latter's daughter moving into decedent's residence and caring for her in exchange for the daughter being given the place. This offer was refused. Mrs. Eula Story testified she told Alvin Ott that in the event Emmett Story, another son of decedent, would not care for Mrs. Ott, she, Mrs. Eula Story, would take and care for decedent for the same thing, namely, decedent's residence.
Plaintiff, Eula Story, testified decedent told her to rent or move into decedent's residence, since plaintiffs were to receive the property at her death, provided they cared for her for the rest of her life. Plaintiff, Audrey Story, testified his mother told him she had advised a Mrs. Whittacker, eventual lessee of his mother's property, that whoever took care of her (decedent) could rent the house, "because the place would go to the ones that took care of her the rest of her life." Mrs. Ouida Hodges, neighbor of plaintiffs, testified that on one of her visits with decedent at plaintiffs' home, in response to an inquiry concerning how long decedent was going to be in the plaintiffs' residence, decedent said "from now on out, I gave them my home to take care of me the rest of my days." None of the other heirs of decedent admitted having knowledge of the arrangement that plaintiffs were to receive decedent's home and property in exchange for their caring for her the rest of her life.
To provide adequate facilities for decedent, plaintiff, Audrey Story, completed an unfurnished bedroom at an expense of more *916 than $200, and put in bathroom fixtures at a cost of $450. When Mrs. Mattie Webb Ott moved in with plaintiffs on December 4, 1954, she was able to move about, and could attend to most of her personal needs. However, she could not get in and out of the tub by herself nor wash and iron her clothing.
In September, 1955, decedent suffered a stroke and thereafter was practically helpless. She had to be kept on special diabetic diet and take injections of insulin daily. She also required digitalis and vitamins. All of her meals were prepared and taken to her. She could not dress herself and Mrs. Story was required to make much new clothing due to decedent's tendency to rip and tear her clothing. Decedent had little control of her physical functions and would often evacuate in her room or wherever she happened to be. Someone was required to bathe her and clean the house after her. She dipped snuff and would often spit upon the floor and walls. Constant care was required because of the damage she would do to the room furnishings and the room itself. Special foods had to be purchased and prepared for her, she had to be taken to the doctor, and Mrs. Eula Story would often carry her to visit her children.
The debt sued upon is a community debt and Audrey Story, as head and master of the community, is the only one entitled to prosecute this claim. Therefore, Mrs. Eula Story has no right to stand in judgment in the collection of this community debt. Succession of Berthelot, La.App., 1 Cir., 1945, 24 So.2d 185; Prats v. Prats, La. App.Orleans 1955, 77 So.2d 205; Casente v. Lloyd, La.App.1953, 68 So.2d 329.
Article 229 of the LSA-Civil Code provides that children are bound to maintain their father and mother and other ascendants, who are in need. Services rendered by a son or daughter to a parent in the way of nursing and attention to the physical needs of the parent are presumed to be gratuitous, and no recovery can be had, unless on a contract either expressed or implied. Farrar v. Johnson et al., 172 La. 30, 133 So. 352; Succession of Berthelot, supra; Muse v. Muse, 1949, 215 La. 238, 40 So.2d 21.
One who renders valuable services to another for a number of years under the promise that these services will be rewarded after the death of the person to whom the services are rendered is entitled to recover from the succession of the person to whom the services were rendered the reasonable value of the services where no specific amount was agreed upon and no remuneration has been made. Succession of Oliver, 1936, 184 La. 26, 165 So. 318; Succession of Joublanc, 1941, 199 La. 250, 5 So.2d 762; Succession of Berthelot, supra. The law is well settled that claims made against a decedent's estate based upon oral promise made by a deceased person should be received with great caution and close scrutiny, and rejected unless corroborated by strong and credible circumstances. Succession of Moore, 225 La. 248, 72 So.2d 494; Succession of Savant, 1 Cir., 1931, 15 La.App. 396, 132 So. 263.
It is also provided in Section 2 of Act 11 of 1926, LSA-R.S. 13:3722 that parole evidence shall not be admissible to prove any debt or liability on the part of a deceased, if a suit is brought within 12 months after the death, unless the parole testimony consists of at least 1 credible witness of good moral character besides the plaintiff; or unless it be to corroborate a written acknowledgment or promise to pay signed by the debtor.
The crucial question in this case is whether or not an express agreement or its equivalent existed between the plaintiffs and Mrs. Mattie Webb Ott that plaintiffs would be compensated for their services at the death of Mrs. Ott.
The District Judge, in her written reasons for judgment, when referring to an agreement for remuneration of plaintiffs, stated that one witness, Mrs. Ouida Hodges, *917 testified of hearing decedent say she had given plaintiffs her place to take care of her the rest of her days and she was going to stay with them "from here on out". The District Judge added that the testimony of Mrs. Hodges was uncorroborated. We feel the District Judge erred. Both plaintiffs testified that Mrs. Ott had promised to give them her home and property at death, and their testimony was corroborated by the testimony of Mrs. Hodges. We feel this testimony in itself would be sufficient to support a judgment in favor of plaintiffs. But there are additional circumstances which also convince us that Mrs. Ott intended to and promised to compensate plaintiffs for their services.
The record shows that the decedent was an independent woman and one who was interested in paying for all services rendered to her and for all debts incurred. The record also shows that during the 27 months decedent lived with plaintiffs 28 welfare checks in amounts varying from $47 to $68 were received by plaintiffs. The record also shows that the monies received from these checks and those monies collected as rental payments on decedent's house and property were used by plaintiffs as they saw fit. We are convinced all of the monies received by plaintiffs were not required for the care of decedent and decedent realized and was aware that some money remained over and above the actual expenses incurred in caring for her, and that she intended that this additional money serve as a part payment for the onerous services rendered by plaintiffs. It is difficult for us to perceive that an independent lady such as Mrs. Ott would expect anyone to incur considerable expense in preparing adequate facilities to accommodate her and to actually perform services of the nature rendered by plaintiffs without remuneration.
In addition, the Administrator in his answer stated that $98 per month was received and used by plaintiffs for whatever purposes they wished and that this amount was reasonable and adequate remuneration for the services they rendered to the decedent. The proof shows that plaintiffs did not receive the full sum of $98 per month over the entire 27 month period in which they kept and attended the decedent, but the fact remains that the admissions made by the Administrator in his answer show that the services were not gratuitous. See Succession of Berthelot, supra. Another corroborating circumstance is the fact that decedent had promised to give her daughter, Mrs. Perrault, her house and property provided Mrs. Perrault would live with her for the rest of her life. After the departure of Mrs. Perrault from decedent's house, Alvin Ott, a son of decedent, attempted to make similar arrangements for plaintiffs' daughter to live with decedent and care for her. If decedent desired to remunerate the persons who attended her in her own home, we feel it was most probable that she intended and promised to reward plaintiffs who prepared their home to accommodate her and who gave her most attentive care.
We feel the District Judge erred in concluding that plaintiffs failed to bear the burden of proving any agreement or understanding, either express or implied, by the circumstances that they were to get more than the amount of the welfare check and the money realized from the rent of decedent's property for caring for decedent.
Dr. Melvin D. Robinson, a general practitioner in Denham Springs, testified the decedent had been a patient of his, and at the time she went to live with plaintiffs in December, 1954, she needed to be nursed because she couldn't be depended upon to take her medicine or remain on her diet. He felt she needed to be where someone else was in charge and had the responsibility of caring for her. Defendant Administrator called as a witness Mrs. S. D. Sevier, who operated the Hildegarde Clinic, a nursing home for convalescent and aged people, in Baton Rouge. She stated that a diabetic patient is a very expensive one and her price for caring for a diabetic was $150. She testified this figure would not include the cost of medicine and physicians' *918 fees, but these costs were to be paid by the family. The Clinic's monthly charge would include cost of the special diabetic foods. Clinics such as the Hildegarde Clinic are, of course, geared to accommodate and to care for a number of patients. The prorata costs of caring for a number of patients would be less than the cost of nursing a single patient. The task of caring for decedent was burdensome and restrictive, and we feel plaintiff is entitled to greater compensation for caring for decedent than would have been charged by the Hildegarde Clinic. We feel the sum of $175 per month, or a total of $4,725 for the 27 months plaintiffs attended decedent is fair and equitable. However, this figure must be adjusted by the total amount received by plaintiffs less actual expenses proven by plaintiffs, plus a charge against plaintiffs for monies received when decedent was being cared for by other members of her family.
Plaintiff and his wife testified that all monies received on behalf of decedent from her welfare checks and rental of her house and property, namely $2,421, were spent for care of decedent over the 27 months she was with them. However, they kept few records of actual expenses incurred on behalf of decedent and, overall, their testimony was general and vague concerning the disposition of her funds. It goes without citation that all charges and debts must be proven to a legal certainty, and we will permit plaintiff to receive credit against the monies received by him for only those items of expense which he adequately proved. Plaintiff's wife testified that an average of $10 per month was spent on medicines for decedent. We feel the fact that decedent required daily injections of insulin for her diabetic condition and since digitalis was required for her heart disease, and numerous other medications and vitamins were required for decedent's overall poor physical and mental condition during her stay with plaintiff, that these are adequate corroborating circumstances to justify a nominal credit of $10 per month, or $270, for medicine required by decedent. There was considerable conflict in the testimony as to how long decedent lived with her son, Alvin Ott, during the period December 4, 1954, through March 3, 1957. Mrs. Eula Story stated she thought the Alvin Otts kept decedent about 3 months, while her husband, plaintiff Audrey Story, felt decedent was away from his home altogether approximately 14 weeks. Mrs. Alvin Ott testified she kept decedent on 3 separate occasions for 8 weeks, 10 weeks, and 2 weeks, respectively, and on odd occasions totaling 30 days or for a total of 6 months. Mrs. Alvin Ott testified she received a couple of welfare checks during one of the times she was keeping decedent and on other occasions received cash from the plaintiff, or his wife. The testimony concerning the length of time decedent stayed with the Alvin Otts being rather vague, and in an effort to give credence to all of the testimony, and to do justice in the case, we conclude the Alvin Otts kept Mrs. Mattie Webb Ott for a period of 4 months and received welfare checks or sums of money equivalent to welfare checks in the amount of $224.
The following is a list of expenses and disbursements made by plaintiff or his wife which we feel he has proved and is entitled to a credit against the amount of money received on behalf of decedent:

Medical Expenses $270.00
Disbursement to Mr. or Mrs.
Alvin Ott while decedent was
attended in the Alvin Ott residence 224.00
Insurance Premiums on Mattie
Webb Ott policy 83.68
Baton Rouge General Hospital 94.70
Dr. Black 110.00
Dr. Richard Selser 63.00
Dr. David Thibodeaux 46.00
Dr. Ewell Kemp 60.00
Dr. Melvin Robinson 44.00
 _______
 Total $995.38

Considering the total received by plaintiff on behalf of decedent, $2,421, and deducting therefrom the actual expenses *919 which plaintiff proved were expended on behalf of decedent, the estate of decedent should be credited for the sum of $1,425.62 towards payment of the charges for nursing services and board and lodging of decedent. The estate should also be credited for any other monies received on behalf of decedent and not accounted for by plaintiff, along with credit for appropriate charges during those periods plaintiff did not tender the nursing services nor board and lodging to decedent. During the 4 month period decedent lived with her son, Alvin Ott, plaintiff received $125 as rental payments on decedent's house and property and this sum was retained by plaintiff. The estate should be credited for this amount. Neither is the plaintiff entitled to the monthly charge of $175 for nursing and board and lodging of decedent during the 4 month period she resided with her son, Alvin Ott. Hence, the estate is entitled to a credit of $700. The record reflects that Mrs. Stella Ott Perrault, daughter of decedent, kept decedent for a 10 day period, so plaintiff is not entitled to his fee for nursing services, board and lodging during this 10 day period; hence, another credit in the amount of $58. Decedent's estate is also entitled to a further credit of $28.82 for monies received by plaintiff from welfare check and rent while decedent was being cared for by Mrs. Stella Ott Perrault. Plaintiff is not entitled to receive his fee for nursing services and board and lodging for the 20 days decedent was in the Baton Rouge General Hospital and Independence Hospital; therefore, a further credit to the estate of $117. While decedent was in the Baton Rouge General Hospital, plaintiff received a welfare check in the amount of $47 and a rental payment in the amount of $30. During the 6 days decedent was so hospitalized, plaintiff was not entitled to the rent and welfare check; hence, a further credit of $15.40. During the month decedent was hospitalized in Independence for 14 days, plaintiff received welfare checks and rental payments totaling $98; hence, a further credit of $44.78. The record also reflects that plaintiff's wife sold a refrigerator belonging to decedent for the sum of $100 and that the money was retained by the plaintiff. Accordingly, decedent's estate should be credited for this $100. Therefore, the defendant Administrator of the estate of decedent Mattie Webb Ott was entitled to credit the estate the sum of $2,609.62 against their indebtedness of $4,725 to plaintiff Audrey M. Story for nursing services and board and lodging rendered the decedent, Mattie Webb Ott.
For the reasons assigned the judgment appealed from insofar as it was rendered against Mrs. Eula Graham Story is affirmed.
It is further ordered that the judgment appealed from insofar as Audrey M. Story is concerned is reversed, and it is adjudged and decreed that the plaintiff, Audrey M. Story, shall recover of and from the Succession of Mattie Webb Ott the sum of $2,115.38, with legal interest from the date of judicial demand, and the costs of this suit.
Affirmed in part and reversed in part.