BYRNES, Judge.
Plaintiff appellant, Peaks, sued the succession of Clemon Butler for payment of $32,514.80 allegedly due her for services rendered by her to the decedent. These services involved caring for the decedent for approximately the last three and one half years of his life. Mrs. Peaks has perfected this appeal, urging that the trial judge erred in his determination that the she failed to carry the burden of proof required to establish that a contract for services existed between herself and the decedent. After a careful reading of the record we believe that the trial judge was correct in his denial of appellants claim.
La.R.S. 13:3722 states that “When parol evidence is admissable under the provisions of R.S. 13:3721 the debt or liability of the deceased must be proved by the testimony of at least one creditable witness other than the claimant, and other corroborating circumstances.” (Emphasis ours) The appellant contends that she carried her burden of proof under this statute. In support of his contention she relies on two items of proof. The first item concerns the witnesses she produced to lend credence to her claim. The second involves her use of a statutory will, executed by the decedent, as the corroborating evidence required by R.S. 13:3722. This will was found to be invalid as to form and was never probated.
Appellant maintains that she started to come over to the decedent’s house to render services on or about December 15, 1976. At this time informed him that she could not do the work for free and she would have to be paid. She testified that she spent approximately six hours a day at the decedent’s house until August 26, 1977 when she increased the time she spent at the house each day to approximately twelve hours. This continued until March 16, 1979 when due to the illness of the decedent, she started staying at the house around the clock. Twelve days later, on March 28, 1979, a statutory will was executed, by the decedent leaving the appellant a certain piece of property located at 2331 Louisa St. in New Orleans as well as a washer and dryer. Clemon Butler signed this will by his placing an “X” on the signature line. The will was also signed by two “witnesses” and by the notary. At a pre-trial deposition and again at trial the notary who wrote the will testified that the decedent did not sign the will in the presence of either of the two witnesses. He testified that one of the witnesses was not even present in the house at the time of the signing of the will, but had signed as a witness some time afterwards. Appellant maintains that this will, although invalid for lack of form, is evidence of Mr. Butler’s intent to leave her property in payment for the services she had rendered. Peaks maintains that were it not for the will’s fatal defects as to form she would have been compensated for her services as the decedent wished. We disagree.
We question this will substantively. Even if the will were valid as to form there is a serious question as to whether testamentary intent existed. The record indicates that Mr. Butler never indicates his desire to leave property to Mrs. Peaks to anyone other than Mrs. Peaks herself. He had executed a will, valid as to both form and content, two years earlier, leaving all his property to his niece and his foster son. The notary who drew up the invalid will testified that he came to the decedent’s house at the request of Mrs. Peaks and drafted the will only after Mrs. Peaks had told him what to put in it. He then brought the will back to the decedent’s house and proceeded to question the decedent concerning his intentions. He testified that when he asked the decedent if he wanted to will the house and appliances to Mrs. Peaks the decedent nodded his head affirmatively. However testimony by the record indicates that at the time this will was signed the decedent his physical condition had so deteriorated that he could hard *1334 ly raise his head from his chest. Communication was virtually impossible due to his physical infirmities.
“The law is well settled that claims made against a decedent’s estate based upon oral promises made by a deceased person should be received with great caution and close scrutiny, and rejected unless corroborated by strong and credible circumstances.” Story v. Story, 131 So.2d 913 (La.App. 1st Cir.1961). We further note that the will itself makes no mention of payments to the appellant for services rendered. It states that: “I hereby will and bequeath. . . to my housekeeper Virlee Peaks, who has rendered aid and assistance in taking care of me since 1975,...” The will establishes the alleged employee-employer relationship but nothing else. There is no indication that the will was intended to be anything but a purely gratuitious donation. Nowhere is there any hint that bequest might be remunerative in nature.' The record and testimony, taken as a whole, casts such serious doubt on the existence of testimentary intent that we feel the trial judge was correct in refusing to accept the statutory will as corroborating evidence of an alleged debt owed to appellant.
We next address the question of the existence of credible witnesses to prove the existence of the alleged contract. We note that appellant, by her own testimony, admits that no one else was present when the alleged oral agreement between herself and the deceased was made. Again we must examine the alleged contract’s existance very carefully.
Testimony indicates that no one else but the appellant believed that she was taking care of the decedent for any reason other than personal affection. Although the appellant denied it, evidence from other parties indicates that she was commonly known as “his woman” from approximately 1971 on. Evidence and testimony shows that Peaks signed a mortgage note as the decedent’s wife and that she disciplined the decedent’s foster child on occasion. Decedent’s foster child, Levi Arnold, testified that decedent had told him that Mrs. Peaks was “his woman” and Levi’s “auntee”. The record, when viewed as a whole, indicates that the relationship between appellant and decedent was not that of employer-employee but was of a close personal nature. None of the other witnesses testified that an employer-employee relationship existed. They did testify however to the close personal relationship which existed between the decedent and the appellant. Appellant would have us believe that by establishing that she was at the decedent’s house and performed some chores she has established the existence of the employer-employee relationship she alleges existed. We disagree, and find that the appellant did not present credible witnesses to substantiate her claims of an oral agreement between herself and the decedent as required by La.R.S. 13:3722.
For the above reasons the decision of the trial judge is hereby affirmed. All costs of this appeal to be borne by the appellant.
AFFIRMED.